Du Pont vs. Davis.

Du Pont vs. Davis.

EJECTMENT.  *Clerical errors do not vitiate description—Degree of certainty required—Defendant's admission of title—Fixed monuments must control in description—Evidence.*

1. The complaint in ejectment was entitled "County Court, Milwaukee County," and described the land as situate in "township No. 7 north, of range 22 west, *in said county*." There is no range 22 west in said county, but the word *west* is a clerical error for *east*. *Held,*

Du Pont vs. Davis.

that this word may be regarded as surplusage, and the remaining words show what range is meant, and that the land is within the jurisdiction of the court, the county by relation becoming a part of the description.

2. The boundaries of said lands are described as "commencing in the east line" of a specified quarter section, at a specified distance from the N. E. corner, "running thence south along said east line of said quarter section to the center line of Clybourne street produced across said quarter section, thence along the center line of Clybourne street," a specified distance, "thence north to a point due west of the place of beginning, thence to the place of beginning." *Held*, that the description is sufficiently certain, although "there is no such street as Clybourne intersecting the *east* line of said quarter section, and it is not stated whether Clybourne street, as produced, is to be produced east or west, north or south."

3. The answer claimed title in defendant under one C., and alleged that C. entered into possession of the premises, on, etc., under claim of title exclusive of any other right, founding such claim upon a deed from one P. and wife, of the same date, *as being a conveyance of the premises;* and that defendant and his grantor had been in possession adversely to plaintiff for the period limited by the statute. *Held*, that this was an admission of P.'s title, and it was sufficient for plaintiff to make proof that he had succeeded to P.'s rights, without showing title in the latter.

4. In the description of the premises in a deed, the courses and distances expressed must yield to fixed monuments and natural objects.  *Gove v. White*, 20 Wis., 425.

5. Thus, where one boundary of the lot conveyed is the Menominee river, and the others can be determined by references in the description to corners and lines fixed by the government survey, calls inconsistent therewith for distance on some of the boundary lines may be disregarded.

6. Hearsay information of the death of a person, derived from his immediate family, may be admitted as *prima facie* evidence of the fact.

7. Where plaintiff in ejectment and his brother had been joint tenants of the land in dispute, by virtue of a deed to them, and a witness in the action testified that he understood, from information received from members of the family, that said brother was killed at a certain time, before the commencement of the action, this was evidence sufficient to go to the jury that the joint tenancy had ceased and plaintiff had taken the whole estate as survivor.

8. Whether an objection to the non-joinder of the co-tenant was waived by a failure to take it in the answer, is not here decided.

APPEAL from the County Court of *Milwaukee* County.

Ejectment. The complaint was entitled "County Court, Milwaukee County," and alleged that the plaintiff had an estate in fee and was entitled to the possession of certain premises, described as follows: " commencing in the east line of the southwest quarter of section thirty in township No. 7 north, of range twenty-two west in said county, at a point nine chains and forty links south of the northeast corner of said quarter section, running thence south along said east line of said quarter section to the center line of Clybourne street produced across said quarter section, thence along the center line of Clybourne street two chains and fifty links, thence north to a point due west of the place of beginning."

The answer contained: 1. A general denial. 2. An allegation that defendant claimed title to the premises under one Clark, who had entered into possesion on the 13th day of March, 1850, under claim of title, exclusive of any other right, founding his claim upon a conveyance from one Sylvester Pettibone, dated March 13, 1850, and recorded March 15, 1850, as being a conveyance of the premises in question, and that there had ever since been a continued occupation and possession of the premises under such claim.

Upon the trial, plaintiff offered in evidence a plat of the premises, to which defendant objected for the reasons: first, that it appeared on the face of the complaint that the court had no jurisdiction of the subject matter of the action; and second, that the complaint did not contain facts sufficient to constitute a cause of action, but the objection was overruled and the evidence admitted. Plaintiff then offered in evidence a deed from Sylvester Pettibone to Alfred Du Pont, dated April 12, 1848, and recorded June 30, 1848, of the following described premises: " Four acres and forty one-hundredths of an acre of land, being part of the southwest quarter of section No. thirty, (30), in township No. seven, (7) north, of range No. twenty-two (22) east, particularly described as follows: " Commencing at a point

on the east boundary of said quarter section nine chains and forty-one links south of the northeast corner; thence west two chains and fifty links; then south parallel with the east boundary seventeen chains and twenty-two links to the middle of the Menominee river; thence south fifteen and three-fourths degrees east, in the middle of said river, two chains and sixty links to the east boundary of said quarter section; thence north, on said east boundary, seventeen chains and ninety-five links to place of beginning, containing four and forty one-hundredths acres of land." To which defendant objected that it did not appear that Sylvester Pettibone had title to the premises, but the objection was overruled and the deed admitted in evidence. Plaintiff was also allowed against defendant's exception to put in evidence a deed from Alfred Du Pont and wife, dated October 15, 1855, conveying to Henry Du Pont and Alexis I. Du Pont, the property described as above. In both of said conveyances the premises were described with reference to range twenty-two *east*, while the description in the complaint was range twenty-two *west*. Plaintiff then called as a witness one Amos H. Gardner, who testified that he had known the Du Ponts since 1858; that they were engaged in the manufacture of powder in Wilmington, Delaware, and that he was an agent for the sale of their powder. Q. "Do you know whether Alexis J. Du Pont is living or not? A. I think that is one that was killed; I think that was his given name; he was blowed up in 1855 or 1856. Q. How was he killed? A. By the explosion of a powder mill, his brother told me." Objected to by defendant's counsel. Being cross-examined he testified: "I know Henry Du Pont, the plaintiff, personally. I did not know Alexis J. Du Pont personally; I never saw him. Q. Do you know that there was any such man living? A. I never saw the man; I was not acquainted with the family until after he was killed. Q. You don't know that he ever was killed? A. Only by public report; newspaper reports and all their reports; I did not see him killed." And being again

examined by the plaintiff, he testified : " I got this information from the family there at Wilmington." Defendant then moved for a non-suit, upon the ground that the complaint did not state a cause of action ; that sufficient facts were not alleged to give the court jurisdiction ; that plaintiff had not made sufficient proof of his title ; that Alexis J. Du Pont was a joint tenant with plaintiff and had not been joined as a plaintiff. The court allowed the motion for a nonsuit, and plaintiff appealed.

*Mariner, Smith & Ordway,* for appellant, contended that the description of the particular range in which the premises were situated, was a non-essential, and that the omission of the word " Milwaukee " in the body of the complaint, as descriptive of the county, was not a fatal omission, since this word was used in the caption and by relation became a part of the description. It was only requisite that enough should be stated to supply a description by which the land could be pointed out and identi- fied. *Kennedy v. Knight* et al., 21 Wis., 347 ; *Atwater v. Schenck,* 9 Wis., 160 ; *Brayton v. Jones,* 5 Wis., 117 ; *Ames v. Ames,* 5 Wis., 160 ; *Sweet v. Mitchell,* 15 Wis., 641 ; *Jackson v. Loomis,* 18 Johns., 81 ; Broom's Legal Maxims, 490.

*Cary & Cottrill,* for respondent, relied upon chapter 141, sec- tion 5, revised statutes, which provides that in ejectment the " premises shall be described with sufficient certainty, designa- ting the number of the lot or township,   *   *   * · and if none, describing such premises by metes and bounds, or in some other way, so that from such description, possession of the premises claimed may be delivered ; " also upon the 5th clause of sec- tion 14, providing that if the verdict be for a part of the premi- ses, it shall " particularly specify such part with the same cer- tainty hereinbefore required in the complaint ; " also upon the 6th clause of the same section, providing that when the verdict is for an undivided share, it shall " describe such part of the premises as hereinbefore required." The 18th section requir- ing that judgment for the premises should be " according to the verdict of the jury," and if on default then, " according to the

description thereof in the complaint," and the 19th section pro-viding that the judgment should be "conclusive as to the title established," counsel contended that from the description in the complaint, possession of the premises could never be delivered.

COLE, J. We think the nonsuit in this case was improperly granted.

It is objected that the description of the premises, as given in the complaint, either shows that the land sought to be recovered was not within the jurisdiction of the court, or was so uncertain, that possession of it could not be delivered by the sheriff. The premises, as described in the complaint, were bounded as fol-lows: "Commencing in the east line of the southeast quarter of section thirty, in township No. 7 north, of range twenty-two *west*, in said county, at a point nine chains and forty links south of the northeast corner of said quarter section, running thence south along said east line of said quarter section to the center line of Clybourne street produced across said quarter section, thence along the center line of Clybourne street, two chains and fifty links, thence north to a point due west of the place of beginning, thence to the place of beginning." Now it is said that the lands are described as being in range twenty-two *west* and that there is no such range in this state. It is admitted that there is a mistake in describing the range as twenty-two *west*, instead of twenty-two *east;* but it is said there is a sufficient description of the premises without the range, and, therefore, this erroneous addition may be rejected in conformity to the maxim, *falsa demonstratio non nocet.* It appears to us that this is a sufficient answer to the objection. The complaint is en-titled " County Court, Milwaukee County."

The county then, by relation, becomes a part of the descrip-tion given in the body of the complaint, and shows beyond all question that the land was situated within the jurisdiction of the court. It would seem to be unnecessary to cite authorities in support of so plain a proposition as that the clerical error in

writing the word "west" instead of "east" must be disregarded when the premises are otherwise sufficiently described as being in Milwaukee county.

But it is further insisted that there is an uncertainty in the description in this : that there is no such street as Clybourne street intersecting the east line of the quarter section mentioned, and that it is not stated whether Clybourne street as produced is to be produced east or west, north or south. A bare reference to the description, however, will show that the street must cross the quarter section in a westerly direction, because a line drawn north from the terminal point of the boundary in the street produced is described as reaching a "*point due west of the place of beginning.*" This is all that we deem it necessary to say upon the first three grounds relied on in support of the motion for a nonsuit.

The fourth ground was, "that the plaintiff had not made sufficient proof of his title to recover." The plaintiff's proofs consisted of a deed of the premises from Sylvester Pettibone to Alfred Du Pont, dated April 12, 1848, and recorded June 30, 1848, and a deed from Alfred Du Pont and wife to the plaintiff and Alexis J. Du Pont, "*and the survivor of them,*" dated Oct. 15, 1855. And it is insisted that there is nothing whatever to show that Pettibone ever had any title to the premises in controversy. We think it sufficiently appears from the answer that he was the common source of title. The answer in the first place contains the general denial, and as a further defense, claims title to the premises under one Elisha B. Clark, who, she alleges, entered into the possession of the premises on the 13th day of March, 1850," under claim of title, exclusive of any other right, founding such claim upon a written instrument, to-wit: a deed from one Sylvester Pettibone and wife, bearing date on that day " as *being a conveyance of the premises in question,*" and claiming title by adverse possession for the period limited by statute. Now it appears to us that these allegations must be deemed to fairly admit that Pettibone

once had title to the premises, and that Clark accepted the deed from him as being a conveyance of them.   Persons do not generally accept deeds of conveyance from parties who do not have, or who are not supposed to have, some title or interest in the property which they assume to convey.   And the necessary inference from the answer is, that Clark accepted the deed from Pettibone as conveying the title, and thus, by his conduct, admitted that his grantor had an interest in the property.    In other words, we think the answer admits that Pettibone was the common source of title, and the plaintiff was, of course, entitled to the benefit of this admission. But again it is insisted that if the map of the premises was properly in evidence, this shows that the deed to Alfred Du Pont did not describe or embrace the land sued for.    To give it that effect, it is said, the description must start where it does in the deed, and the distance, 17 chains and 22 links in the second line, and 17 chains and 95 links in the last line, must be wholly disregarded.   We suppose it to be well settled that courses and distances must yield to fixed monuments and natural objects.   *Gove v. White*, 20 Wis., 425.   In this case there is no claim that there is any difficulty in tracing the government surveys, and in ascertaining the precise place of the quarter section corner.   This gives the point from which the northeast corner of the lot can be determined.   The second line is to run to the middle of the Menominee river, a well defined natural object, which forms the boundary on the south. And the last course is from the intersection of the middle of that river and the last line of the quarter section north to the place of beginning.   These monuments established by the government surveys, and the Menominee river, must have a preference over the length of the second and fourth lines as given in the deed, and fix the boundaries of the lot conveyed.

The last ground relied upon to sustain the motion for a nonsuit was, that it appears by the deed introduced that Alexis J. Du Pont is a joint tenant of the premises with the plaintiff, and should have been joined as a party plaintiff in the action.   It

is claimed on the part of the plaintiff that the defendant having failed to insist upon the non-joinder in her answer, cannot now take advantage of the omission to join the co-tenant. Whether this is a correct position or not, we shall not stop to inquire. For assuming that the deed from Alfred Du Pont to the plaintiff and Alexis J. Du Pont, created an estate in joint tenancy, and yet there was sufficient evidence of the death of Alexis to carry the case to the jury upon that question. The witness Gardner, who has been acting as agent for the Du Ponts in selling their powder in Milwaukee since 1858, says that he understands from information received from the family at Wilmington, Delaware, that Alexis was killed by the explosion of a powder mill in 1855 or 1856. In *Anderson v. Parker*, 6 Calif., 197, it was said that hearsay information of the death of a person, derived from the immediate family of the deceased, was sufficient, *prima facie*, to establish the fact. See also 1 Green. Evid., section 104; *Morrill v. Foster*, 33 N. H., 379. Hearsay evidence is admitted in cases of pedigree, and the term pedigree, says Prof. Greenleaf, " embraces not only descent and relationship, but also the facts of *birth, marriage* and *death*, and the times when these events happened. 1 Green. Evi. *supra.* Upon the evidence of the witness Gardner, the jury might have found that Alexis J. Du Pont was *dead*, and that the plaintiff took the entire estate by the right of survivorship.

It follows from these views that the judgment of nonsuit must be reversed and a *venire de novo awarded*.

*By the Court.*— So ordered.