Parkinson vs. McQuaid.

---

PARKINSON vs. McQUAID.

*February 10 — March 14, 1882.*

CONSTRUCTION OF DEED: EVIDENCE: VERDICT. *(1) Fundamental rule of construction. (2) Rule applied: when a fixed monument (as a post), named in description, must yield to other parts of description. (3) Evidence of agreement of parties to abide by a survey. (4) Instructions to jury. (5) Surplusage in verdict.*

1. The fundamental rule in the construction of deeds is to so construe them as to give effect, if possible, to the grantor's intention.
2. A deed described the boundaries of the land thereby conveyed as "beginning at the N. W. corner" of a certain forty; running thence south a certain distance to a certain line, thence east along said line twenty chains; thence north a certain distance *to a post;* thence west twenty chains; thence south to the place of beginning, containing a specified number of acres. The grantor did not own any land west of the west line of said forty, but did own the land twenty chains in width east of said line, of the north and south length described in the deed. A survey of the tract conveyed was made at the time of the deed, which was supposed by the parties to be correct, and a partition fence was built by them along what was then supposed to be the east line of said tract. In

making such survey, the surveyor and the parties *intended to make* the
N. W. corner of said forty the starting point. The tract so described
and surveyed contains the exact *amount* of land named in the deed.
Three years later, the grantee removed the fence several rods farther
east, claiming that to be the true eastern boundary of his land. In an
action by the grantor against him for such removal as a trespass, *Held*:

(1) That the facts and circumstances above stated were admissible in
evidence to aid in construing the deed.

(2) That upon those facts it appears clearly to have been the inten-
tion of the parties to convey and take the amount of land named from
lands belonging to the grantor lying wholly east of the west line of said
forty; and the boundaries of the tract conveyed must be determined by
taking the *true* northwest corner of said forty as the starting point, and
following the calls of the deed, even though the east line as thus lo-
cated should lie *wholly east of the post* named in the deed.

(3) That where there were several surveys made, which purported to
start from the northwest corner of the forty, and gave different eastern
boundary lines, it was for the jury to determine which was the true
survey of that line.

3. Where a boundary line was in dispute, the parties interested executed an
agreement, which declares that they "hereby agree to abide by the sur-
vey now being made by Messrs. A., B. & C." *Held*, that the agreement
was valid, and, after the same had been put in evidence, it might further
be shown by oral evidence to what line the agreement refers, that the
survey therein mentioned was made and agreed to by all the surveyors,
that afterwards the contracting parties all expressed themselves satisfied
with the result, and that one of the parties to the suit thereupon gave
the other possession in accordance with such survey.

4. The jury were instructed that if they were unable to say from the proof
that there was a greater reason for believing one way than the other as
to where the line actually was, they might still settle the rights of the
parties, so far as this case was concerned, outside of the question where
the line actually was. But the context shows this to have meant merely
that they might find for the defendant if they found that plaintiff con-
sented to the removal of the fence, and that, failing to find such consent
and being unable to determine from the evidence where the true line
was, they might presume it to be where the parties first agreed that it
was when the fence was built, and so might find for the plaintiff. *Held*,
no error.

5. A verdict that the jury find " for the defendant, that he was not guilty of
the trespass complained of," adds that they " establish the line as made
by A., B. & C., and that each party pay his own costs of suit." *Held*,
that it was properly treated as a mere general verdict for the defendant,
the remainder being disregarded.

Parkinson vs. McQuaid:

APPEAL from the Circuit Court for *LaFayette* County. The case is thus stated by Mr. Justice TAYLOR:

"This was an action for a trespass upon real estate, and for taking and removing a fence therefrom. The answer was a general denial, and that the *locus in quo* was owned in fee by the defendant. The whole contention in the case depends upon where the east line of the defendant's land is located. The evidence shows that in 1875 the defendant purchased from the plaintiff seventy acres of land, partly situated in the S. E. ¼ of the S. W. ¼ of section 30, and partly in the N. E. ¼ of the N. W. ¼ of section 31, in township 4 north, range 4 east. In the deed the land is described as follows: 'Beginning at the N. W. corner of the N. E. ¼ of the N. W. ¼ of section 31, in township 4 north, range 4 east; running thence south eighteen chains to the line of Peter Parkinson, Jr., and N. T. Parkinson; thence east along said line twenty chains; thence north thirty-five chains and thirty-seven links to a post; thence west, 1 deg. and 25 min. south, 20 chains; thence south sixteen chains and eighty-four links to the place of beginning; containing 70 21-100 acres of land.'

"The evidence given on the trial shows that the plaintiff, at the time the deed was given, did not own any land west of the west line of the N. E. ¼ of the N. W. ¼ of section 31, nor west of the west line of the S. E. ¼ of the S. W. ¼ of section 30; and it also shows that he did own the land twenty chains in width extending east of both of said lines, and of the length described in said deed. It also shows that a survey of the tract deeded was made at the time the deed was made, which was at the time supposed to be correct by the parties, and that a fence was built by the parties along what was then supposed to be the east line of the tract. It also appears that in making said survey the surveyor and the parties intended to make the starting point the N. W. corner of the N. E. ¼ of the N. W. ¼ of section 31, township 4, range 4. The fence was supposed

by the parties to be the real line until 1878, when the defendant questioned its correctness, and afterwards, and before this action was commenced, a new survey was made, and the east line of the seventy acres was claimed by the defendant to be four rods further east than the fence, and he removed the fence to the new line so claimed by him, and such removal is the trespass complained of."

The other facts bearing on the case are stated in the opinion.

The defendant had a verdict and judgment, and plaintiff appealed from the judgment.

For the appellant there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton.* They contended, *inter alia:* 1. The survey of 1875 started from a point which had been acquiesced in by both parties for more than twenty years as the N. W. corner of the N. E. quarter of the N. W. quarter of section 31; and in the deed they used language which, as they supposed the facts to be, properly described that point. It subsequently transpired that, in consequence of a misapprehension of facts, the language used did not properly describe such starting point. But the point remained certain, and should control notwithstanding the erroneous description resulting from the mutual misapprehension of facts. See *Messer v. Oestreich,* 52 Wis., 689. 2. Even if the starting point of the survey is not to govern in fixing the west boundary of the tract conveyed, still the post referred to in the deed at the northeast corner of the tract must fix its eastern boundary. This post stood at the northeast corner of the fence, as originally built in 1875, and is positively identified. Whatever is most certain in a description or boundary must prevail over what is less certain. A monument, or any marked point which can be identified, is absolutely certain, and must prevail over courses and distances or quantity. Willard on Real Est. & Con., 405; *Wendell v. People,* 8 Wend., 183; *Pernam v. Wead,* 6 Mass., 131; *Alshier v. Hulse,* 5 Ohio,

Parkinson vs. McQuaid.

534; *Reid v. Langford,* 3 J. J. Marsh., 420; *Doe v. Thompson,* 5 Cow., 371; *Lampe v. Kennedy,* 49 Wis., 602; *Wright v. Day,* 33 id., 260; *Marsh v. Mitchell,* 25 id., 706.

For the respondent there was a brief by *J. R. & D. S. Rose* and *M. M. Strong,* and oral argument by *Mr. Strong.*

TAYLOR, J.   One of the contested questions in the case is as to the construction of the deed.   It is insisted by the learned counsel for the appellant, that the post referred to at the end of the third course and distance, being a monument whose location is fixed by the evidence, must limit the defendant's land on the east, whether it be twenty chains east of the west line of the plaintiff's land as owned by him at the time of the deed or not; and that, for the purpose of locating the land according to the description in the deed, the starting point for making the survey should be such post, and then the survey should be traced backwards, and its bounds be so fixed; and that all other descriptions in the deed must give way to this one.   We do not think the post referred to in the deed can have the effect claimed for it by the learned counsel for the appellant.

The fundamental rule for the construction of a deed, whether it relates to the description of the land, the estate conveyed, or other matter, is to so construe it as to give effect, if possible, to the intention of the parties.   *Johnson v. Simpson,* 36 N. H., 91; *B., N. Y. & E. Railroad Co. v. Stigeler,* 61 N. Y., 348; *Jackson v. Dunsbagh,* 1 Johns. Cases, 91; *Jackson v. Myers,* 3 Johns., 388; *Church v. Steele,* 42 Conn., 69; *Wright v. Day,* 33 Wis., 260; *Bridge v. Wellington,* 1 Mass., 219; *Worthington v. Hylyer,* 4 Mass., 196; *Lane v. Thompson,* 43 N. H., 320; *Reed v. Proprietors of Locks, etc.,* 8 How. (U. S.), 274; *Jackson v. Moore,* 6 Cow., 706; *Drew v. Drew,* 8 Foster, 495; Tyler's Law of Boundaries, 121; *Wolfe v. Scarborough,* 2 Ohio St., 361; *Peyton v. Ayres,* 2 Md. Ch., 64.

To arrive at the intention of the parties, the facts and circumstances before the parties at the time may be given in evidence, so far as they can without trespassing upon any of the rules of evidence. *Drew v. Drew*, 8 Foster, 494; *Webb v. Stone*, 4 Foster, 286; *Reed v. Proprietors, etc.*, 8 How., 274.

Considering the fact that the plaintiff did not own the land west of the west line of the N. E. ¼ of the N. W. ¼ of section 31; that the starting place of the description of the land in the deed is the northwest corner of the N. E. ¼ of the N. W. ¼ of section 31; that he did own the lands east of that line at least twenty chains in width; and that the length of the north and south lines of the land conveyed are stated to be just twenty chains, and the length north and south is such as to enclose exactly 70 21-100 acres of land,—it seems to us that it was the clear intention to convey to the defendant that exact amount of land, and to convey it in the form described in the deed, making the west line of the land conveyed the west line of the plaintiff's land. Such was clearly the intention of the parties, as shown by the description in the deed, aided by the evidence showing that the plaintiff did not own any land west of the starting point in the west line of the lands described. Had the evidence shown that the plaintiff owned the land west of the starting point and west line of the land described in the deed, as well as east of the east line, then a survey and location made by the parties at the time the deed was given would be strong evidence that the land so surveyed and located was the land intended to be conveyed, although the starting point had been the same as described in this deed.

In such case the court would probably hold that the description of the starting point in the deed must yield to that adopted by the parties at the time. The fact that the intention was to convey 70 21-100 acres is strongly evidenced by the fact that the survey and location made on the ground at the time the deed was given contained just that amount of land; the mistake being, if any mistake was made, in the loca-

Parkinson vs. McQuaid.

tion of the starting point in that survey. That the parties intended that the N. W. corner of the N. E. ¼ of the N. W. ¼ of section 31 should be the starting point in the survey is evident from the fact that the surveyor testifies that he intended to start his survey at that point. There was no intention to include in the survey made any lands not owned by the plaintiff. It apppearing that it was the clear intention of the parties, the one to sell and convey, and the other to purchase 70 21.-100 acres of land in the form described in the deed, lying east of the west line of the plaintiff's land, the material question in the case is to ascertain the true west line of the plaintiff's land at the time he gave the deed, and when that is done the land must be laid off twenty chains in width, extending east from that line, and of the length stated in the deed.

In *Powers v. Jackson*, 50 Cal., 429, it was held that, if a deed describes the land conveyed by adopting a corner of a subdivision according to the United States survey as a starting point, said corner is a monument and will control, although the party selling at the time of the sale, by an actual survey, fixed the stake at a different point and ran the lines accordingly. In *Verplank v. Hall*, 27 Mich., 79, it was held that, when the initial point in the description of premises in a deed is the southeast corner of the south half of the southeast quarter, fractional, of a section, and a quarter is made fractional by a meandered lake so situated as to cover the eastern and central portions thereof, and the parcel described was carved out of the north half within a year after the same was patented, the southeast corner in question is construed to be the point which constituted the southeast corner of the land when it was surveyed out and patented; and the fact that the waters of the lake have since receded cannot change the boundaries of the lands described, as previously located. This court, in the case of *Gove v. White*, 20 Wis., 425, held in substance the same rule. In that case the starting point was described as a certain section corner, and it was held that such

starting point must control the other descriptions. *Wendell v. People*, 8 Wend., 182; *Du Pont v. Davis*, 30 Wis., 170–177.

In this last case it was held that where the starting point was a quarter-section corner, it was a controlling circumstance in ascertaining the boundary of the lands conveyed. Where lands are conveyed and described as bounded by the lands of another in the deed, the true boundary line between the lands of such other and the grantor is the boundary, although at the time of the conveyance a part of the land conveyed according to such true boundary was enclosed by such other person and claimed to be owned by him. *Sparhawk v. Bagg*, 16 Gray, 583. See, upon same point, *Umbarger v. Chaboya*, 49 Cal., 526; *Cornell v. Jackson*, 9 Met., 150; *Cleavelund v. Flagg*, 4 Cush., 76; *Caswell v. Wendell*, 4 Mass., 108. If the adjoining land-owner had acquired title by adverse possession to the land within his enclosure at the time of the conveyance, this rule would not apply.

In the case of *Cleaveland v. Flagg*, *supra*, it was held " that where land is conveyed beginning at and bounding on the land of P., the point of beginning and boundary is the true line of P.'s land, and not the line of P.'s occupation as shown by a fence set up and maintained by P. before and after the conveyance, with the consent of the owner of the lot conveyed, under the mistaken belief that such was the true line."

In *Cornell v. Jackson*, *supra*, it was held " that where A. conveys land to B., bounded on land of T., the true line of T.'s land is the boundary of the land conveyed, although A. and T. had previously agreed by parol on a different line, and had set up stakes to mark such line, and had afterwards held possession of their respective lands according to such lines; and if B. be evicted from the land lying between the true and the agreed line, he has no remedy on A.'s covenant of warranty, unless A., at the time of the conveyance, pointed out the agreed line as the true one."

These cases, we think, clearly establish the rule that where the starting point in a deed is a known and ascertained point, or one which can be ascertained and fixed upon the ground by proper examinations or surveys, the true place of such starting point is the one referred to in the deed, and not a point which may have been supposed, at the time of making the conveyance, to be such point, unless such starting point has, either by agreement of the parties owning the adjacent lands, or by adverse claim of some of the parties, been changed from its true location.

As was said above, there can be no doubt that the intention of the parties to the conveyance in question in this case was to make the true N. W. corner of the N. E. ¼ of the N. W. ¼ of section 31 the starting point in making the survey of the lands described in the deed; and the fact that they made a mistake in its location in making an actual survey, does not in the least tend to disprove such intention; it rather strengthens it, by showing that they did at the time make an effort to find such true point. The facts that the starting point was a fixed point, capable of ascertainment with at least some degree of certainty; that the plaintiff intended the west line of the tract conveyed to be the true west line of the land owned by him at the time; and that he intended to convey a tract twenty rods in width east of his true west line,— make such starting point a monument which must control, rather than the stake at the end of the third course placed at the time the deed was made. This view of the case is further strengthened by the subsequent acts of the plaintiff as well as those of the defendant. He does not appear at any time to have denied that he intended to convey 70 21-100 acres of his land to the defendant, nor does he allege that the N. W. corner of the land conveyed had been fixed and agreed upon as the true corner by reason of the survey made at the time the deed was given. He seems to admit that the N. W. corner of the land conveyed is the true N. W. corner of the N. E. ¼ of the N. W. ¼ of section 31, and the

whole controversy between the parties is the location of such true corner.

Two surveys of the premises were made by apparently competent persons, and both the surveys differ from the survey made at the time the deed was made. One carries the east line of defendant's land about two rods, and the other four rods, east of the line fixed by the survey made at that time, and upon which east line the fence removed by the defendant was originally placed. The defendant moved the fence to the line four rods east of its former location. There was certainly evidence sufficient to justify the jury in finding the line to which the fence was removed the true east line of the defendant's land, and this court cannot disturb such verdict upon any questions of fact in the case. The jury were the proper persons to determine which of the surveys given in evidence was the true survey of the boundary line.

The learned counsel for the appellant contends that the judgment ought to be reversed for errors in the admission of evidence, and in the instructions given by the learned circuit judge to the jury, and because the verdict of the jury was erroneous in form. The exceptions to the admission of evidence nearly all arise upon the introduction of two written agreements in regard to a survey of said line. The following are copies of the agreements:

(1) "We have agreed to meet on the fifteenth of May at Felix's, and agree upon one or more surveyors to test the survey of Mr. Pool; to be equal in the expenses of doing it.

[Signed]  "P. PARKINSON, JR.,
 "FELIX BURGESS,
 "P. F. McQUAID,
 "JOSEPH VAN METER."

(2)  "FAYETTE, June 17, 1878.
"We, the undersigned, hereby agree to abide by the survey now being made by Messrs. Brown, Gray and Pool, as between

us four, and also agree to bear an equal proportion of the expense occasioned by the making of the same.

"Signed this 17th day of June, 1878.

"PETER PARKINSON, JR.,
"FELIX BURGESS,
"P. F. McQUAID,
"JÓSEPH VAN METER."

These writings were offered in evidence by the defendant, and the plaintiff objected to their reception. The last was offered in evidence first, and was objected to by the plaintiff as irrelevant and immaterial, and because the contract was void under the statute of frauds. The objections were overruled, and the plaintiff excepted. The defendant then offered to show by parol what survey was being made by said Brown, Gray and Pool at the time the contract was made, for the purpose of showing that among other matters the survey then being made was a survey of the east line of the defendant's land. This evidence was objected to by the plaintiff on the ground "that the written contract, if valid, must show what lines were to be established by the survey, and that parol evidence was inadmissible for that purpose." The other evidence objected to by the plaintiff was offered and received for the purpose of showing whether the survey made was agreed to by all the surveyors; whether, when the survey was completed, the parties to the contract expressed themselves satisfied with the result; and whether, after the survey was made, the plaintiff gave the defendant possession of the land in dispute.

We think there was no error in admitting the evidence objected to. The written contract signed on the 17th of June is not void because it does not give a specific description of the lines to be surveyed, and which the parties agreed to adopt as final between them. The parties agree to abide by the survey then being made by certain designated persons. The reference to the survey then being made is not so indefinite as to render the contract void. That is sufficiently certain which

can be made certain by proof, without violating the rule which excludes parol evidence which adds to or changes the written contract. It is not more uncertain than a contract for the sale of a house now in process of building by A. B. for the parties to the contract. Such contract is sufficiently specific in its description if at the time the contract was signed A. B. was in fact building a house for the parties, and such house would be the house meant in the contract. The parol proof in such case does not add anything to the written contract, but it simply applies it to the subject referred to therein. See 1 Greenl. Ev., §§ 286–288, where the admissibility of such evidence is discussed fully and the authorities referred to, showing that it is competent to introduce parol evidence of any extrinsic matter tending to show what person or persons, or what thing, was intended by the parties to the contract, or to ascertain their meaning in any other respect, without any infringement of the rule that parol evidence cannot be given to add to or contradict a written contract. This doctrine is commented upon and approved by this court in *Lyman v. Babcock*, 40 Wis., 503, 512, and *Messer v. Oestreich*, 52 Wis., 684.

We are inclined to hold that such written contract would bind the parties as to all lines then being surveyed by the persons named therein, unless the contract was repudiated by one or more of the parties thereto before the full completion of the surveys made in pursuance thereof. The contract and completed survey made in pursuance thereof would amount to the practical settlement and location of a disputed boundary line between the parties, and, being in writing, would bind the parties thereto. In some of the states it is held that even a parol agreement to locate a disputed boundary will bind the parties after it has been located and acted upon by them. See the cases cited in *Kellogg v. Smith*, 7 Cush., 379, 381. In this case there is no necessity for determining that question, and we do not.

The other exceptions to the evidence are clearly not well

taken, and were not in fact urged by the learned counsel for the appellant.

The counsel for the appellant takes exceptions to each instruction given by the learned circuit judge to the jury. After carefully considering the instructions given, we are satisfied that such of the instructions as relate to the effect which should be given to the written contract between the parties as to the survey were sufficiently favorable to the plaintiff, and that in those instructions no errors were committed which prejudiced him.

The learned counsel for the appellant lays considerable stress upon his exception to the following instructions given by the learned circuit judge: "If the jury are unable to say from the proof that there is a greater reason for believing one way than the other as to where the line is, they may still settle the rights of the parties, so far as this case is concerned, outside of the question where the line actually is." It may be admitted that this instruction, standing by itself, might be subject to some just criticism; but when taken in connection with the rest of the charge to the jury, it can hardly be said to have been erroneous or to have prejudiced the plaintiff. In the very next sentence the judge says that unless the proof establishes the true line to be different from where the parties located it themselves in 1875, then the defendant ought not to have interfered with or removed the fence unless he was licensed to do so by the plaintiff. And further on in his charge he again says to the jury: "If you are unable to determine from the evidence where the dividing line is, and are unable to say that the fence stood on the defendant's land, you are to presume it was rightfully where the parties first agreed to place it. In that case the plaintiff is entitled to recover for removing the fence, unless you find that the plaintiff consented to its removal." The instructions, as a whole, give meaning to the words excepted to, viz., "they may still settle the rights of the parties, so far as this case is concerned, outside of the

question where the line actually is." In the first place they may settle the case in favor of the defendant if the proofs satisfy them that the plaintiff gave the defendant license or consented to the removal of the fence; and second, if they do not find that the defendant had license to remove the fence, and they are unable to determine from the evidence where the true line is, they may presume it was where the parties first agreed it was when the fence was built, and in that case they should find for the plaintiff. Upon the evidence the question of license was properly submitted to the jury, and the last-quoted direction to find for the plaintiff if, from the conflicting evidence of the surveyors, they were unable to determine where the true line was, was clearly favorable to the plaintiff; and in both events they should determine the case without determining where the true line was. As a whole, we are unable to say that the instructions were erroneous, or prejudiced the rights of the plaintiff.

The form of the verdict should not, we think, work a reversal of the judgment. The jury found generally in favor of the defendant, not guilty of the trespass complained of. When they had found that, they had discharged their duty, and the addition that they "established the line as made by Messrs. Brown, Gray, and Pool, and that each party pay their own costs of suit," was mere surplusage, and the court properly directed the clerk to enter the verdict as a general verdict for the defendant. Neither party nor the court having directed the jury to determine specially where the true boundary line between the parties was, they had no right to embody that finding in their verdict, and the law determines which party shall pay the costs.

*By the Court.*— The judgment of the circuit court is affirmed.