ANDERSON, Respondent, vs. HUEBEL, Appellant.

*November 11—November 26, 1907.*

*Judgments: Correction on appeal: Jurisdiction: Boundaries: Agreement as to survey: Surveys: Conclusiveness: Subdivision of section.*

1. A judgment which establishes the boundary between the W. ½ of the N. W. ¼ and the E. ½ of the N. W. ¼ of section 6 as commencing 20.21 chains east of the northwest corner of the section and extending thence south to the quarter-post on the south line of the section, is incorrect, and such judgment cannot be corrected on the theory that the trial court by mistake used the words "quarter-post" as meaning "eighth-post," where the record fails to locate the eighth-post with sufficient definiteness, and another conclusion is permissible.

2. Where parties having a dispute concerning a boundary line agree to have the same located by a designated surveyor and to abide by the location so made, and it is sought to hold the parties to that agreement without reference to the correctness of the line so located, it should appear that some definite survey was made and made in a manner approximating the proper method of making a survey, that it was not a mere random or experimental line, and that the true line could not be readily located or ascertained, or else that the parties acquiesced in and recognized the line so located.

3. If the survey made by the general government and the field-notes thereof afford sufficient means to enable a competent surveyor to locate a given line, that line cannot be said to be doubtful or uncertain.

4. In an action for trespass to real property involving the location of a boundary line, the evidence, stated in the opinion, is *held* insufficient to establish an agreement to abide by a survey made by a designated surveyor whether right or wrong.

5. The proper subdivision of section 6 of a government township is in conformity with the rules laid down by the General Land Office in its circular of March 14, 1901.

APPEAL from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from a judgment rendered in an action for trespass to real property, involving the determination of the location of the boundary line between the parties. The plaintiff owns the W. ½ of the N. W. ¼ and the defendant the E. ½ of the N. W. ¼ of section 6, township 13, range 3 E. A road running east and west crosses the quarter-section a short distance south of the north section line, and from this road north there is a road two rods wide running between the lands of the parties, but from this east and west road south the lands of the parties abut upon this disputed line. A special verdict was returned by the jury as follows:

"(1) Did the parties agree to accept the line as determined by Mr. Schranke as and for their boundary? *A.* Yes. (2) Did the survey of Mr. Hulburt correctly locate the line in question according to the original government survey? *A.* Yes."

Plaintiff's damages were then found to be $4 and defendant's damages $20. The court ordered judgment for the plaintiff for $4 damages and "that the east boundary of the W. ½ of the N. W. ¼ of section 6, town 13, range 3, intersects the north line of said section at a point 20.21 chains east of the northwest corner of said section 6, then extending due south to the quarter-post on the south line of said section." The judgment, however, awarded costs to the defendant for the alleged reason that the trial of the cause did not involve the title to land and the recovery was less than $50. The judgment follows the order for judgment above quoted.

For the appellant there was a brief by *Barney & Price* and *James A. Stone,* and oral argument by *Mr. H. W. Barney* and *Mr. Stone.*

For the respondent there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

TIMLIN, J. 1. It must be obvious that the boundary fixed by the judgment between the W. ½ of the N. W. ¼ and the E. ½ of the N. W. ¼ of section 6, commencing about twenty chains east of the northwest corner of the section and extending thence south to the quarter-post on the south line of said section, is incorrect. The verdict contains nothing from which we could correct this, and it was proposed on the oral argument that we look into the evidence and find that the words "quarter-post" are used in mistake, meaning eighth-post, and that this court should correct the judgment accordingly. But we cannot do this, for the reason that this would take us beyond the boundaries of the quarter-section in question, and the evidence does not seem to us sufficiently clear and undisputed to enable us to determine as matter of law that no other conclusion therefrom is permissible, nor is the eighth-post, which we are asked to substitute for the quarter-post, described in the judgment, located with sufficient definiteness.

2. The judgment of the court below is also challenged because it holds the defendant concluded by a boundary line practically conceded and actually found not to be the true boundary line between his land and that of the plaintiff. This is upon the ground that, the boundary line being in dispute, the plaintiff and defendant agreed to have the location of the same ascertained by the surveyor, Schranke, and to abide by that location. Mr. Schranke was on the stand as a witness and testified that he made the survey of the boundary line referred to in the second question of the special verdict as the survey of Mr. Hulburt. He does not describe any other survey or attempt to uphold or justify any other survey. It is in evidence by mere reference to the fact that Schranke did make a survey of a line between the parties on or about August 14, 1905, but no description of this survey and no showing that it was completed or claimed by Schranke to be correct or his final effort, and of course by

the second finding of the jury settled to be incorrect. Where parties having a dispute concerning a boundary line agree to have the same located by a designated surveyor and to abide by the location so made, and it is sought to hold the parties to that agreement without reference to the correctness of the line so located, it should appear that some definite survey was made and that it was made on something approximating the proper method of making a survey, and that it was not a mere random line or experimental line, and that the true line could not readily be located or ascertained, or else that the parties acquiesced in and recognized the line so located. All of this proof is absent from the case at bar with reference to the first Schranke survey. Nor do we think there was sufficient evidence aside from this to hold the parties bound to the first survey of Mr. Schranke. In *Pickett v. Nelson,* 79 Wis. 9, 47 N. W. 936, it is held that if the survey made by the general government and field-notes thereof afford sufficient means to enable a competent surveyor to locate the line, the line could not be said to be doubtful or uncertain, and *Peters v. Reichenbach,* 114 Wis. 209, 90 N. W. 184, approves this ruling. In *Parkinson v. McQuaid,* 54 Wis. 473, 11 N. W. 682, the agreement was in writing and specific, but the court intimated that that contract would bind the parties unless the contract was repudiated by one or more of them before the full completion of the surveys made in pursuance thereof. Such an agreement as here attempted to be described, if made, would be essentially an agreement to abide by something which was not and could not be properly termed a survey.

3. We find no other sufficient evidence of an agreement to abide by the so-called first Schranke survey. The alleged agreement between plaintiff and defendant is said to have occurred in the presence of Charles Wilkinson, the town supervisor. He happened along and saw the defendant setting his fence posts out in the road,—the road running a short

distance northward between the lands of the parties.   He
later pulled out the posts set by the defendant and threw them
over alongside the fence and forbade the defendant to set
his posts in the road, and defendant said to Wilkinson that
he was not able to do the surveying in order to ascertain the
line, and that if somebody else would go in and pay half he
would pay the other half.   Plaintiff said he would pay all
that it cost over $10.   Defendant said he would move his
fence, and plaintiff said he would move his fence on to the
line.   Wilkinson gave *Huebel* Schranke's name and he
wrote it down.   This manifestly had relation to the road run-
ning north.   Plaintiff's evidence is not much more definite.
He says that the defendant was setting posts out in the road
and going to move his fence over into the road when plaintiff
had a conversation with him, and the part of that conversa-
tion which is supposed to constitute an agreement is that
the defendant told Wilkinson, if somebody would stand half
of the expense of surveying, he, the defendant, would stand
the other half.   Plaintiff then said that he would stand half
of it and they would survey it and that would settle the
trouble with the line.   Both of them said after they had the
line established they were to put their fences on it and would
not have trouble any more.   The defendant gave his evidence
first as an adverse witness in answer to a cross-examination,
and this naturally made the evidence somewhat unintelligible.
But he agreed with the other two witnesses above mentioned
up to the time that *Mr. Anderson* spoke up and said he would
stand half of it in order to have this line settled, added some
more details to it, but denied the existence of an agreement
to put his fence on the line so established unless he got his
eighty acres.   He admitted, however, that he and plaintiff
agreed to set the fences on the line that Mr. Schranke made.
This is entirely consistent with the belief on the part of the
defendant as well as on the part of the plaintiff, very com-
monly entertained, that a survey would locate the line with

absolute certainty, and it falls short of an express agreement to abide by the survey whether right or wrong. It contains no implication to that effect, and there was practically no acquiescence in the line of August 14, 1905.

4. The boundary line between these parties must be very easy of ascertainment by a survey made conformably to the rules of the circular of the General Land Office of March 14, 1901. According to these rules the quarter-post upon the north side of the section in question should be established, and according to these rules the center of the section ascertained and the quarter-post on the west side of the section established. We understand that the east and south quarter-posts can be located. There then remains only the proper division of the N. W. $\frac{1}{4}$, without carrying the division line between the east and west halves of this quarter outside of that quarter-section. It is unnecessary to here rewrite those rules. A copy of them is attached to and made a part of the bill of exceptions, and the survey in question can be made with little expense and comparative accuracy.

*By the Court.*—The judgment of the circuit court is reversed, with costs, and the cause remanded for further proceedings according to law.