WILSON, Appellant, vs. STORK, Respondent.

*April 9—June 1, 1920.*

*Boundaries: Relocating original government surveys: Evidence of long-established boundary lines: Oral agreement to abide by new survey: Effect: Adverse possession.*

1. When marks established by the original government survey cannot be found, the location of long-established and recognized physical evidence of boundary lines, as indicated by the maintenance of boundary fences, becomes of value and importance, and cannot be disregarded or set aside either by a surveyor or by a court in determining the true government line.

2. The use by adjoining landowners of land on their respective sides of a fence up to the fence for more than twenty years established title in and to the farms on each side thereof, whether such possession or occupancy by either party went beyond the calls of their respective deeds or not.

3. Under the evidence in this case, an oral agreement by the adjoining landowners to abide by a survey made by a surveyor selected by them necessarily carried with it the implied understanding that the boundary line must be the correct one and be established with something approximating absolute certainty, and should not be construed as an agreement to abide by a line whether right or wrong.

APPEAL from a judgment of the county court of Walworth county: JAY F. LYON, Judge. *Reversed.*

The cause was submitted for the appellant on the brief of *E. T. Cass* of Whitewater, attorney, and *Nolan & Dougherty* of Janesville, of counsel, and for the respondent on that of *Easton Johnson* of Whitewater.

ESCHWEILER, J.   This is a line-fence controversy. The trial court in his decision expressed regret that this controversy over a little strip of land of small value was not settled between the parties instead of having been made a matter of legal controversy. We concur most heartily in that view of the situation.

The plaintiff and his father, predecessor in title, since about 1860 were in continuous possession of a farm in section 16 in the town of Richmond, Walworth county, this state.    Just south thereof is the farm which has been owned by the defendant since about 1911.

As early as 1860 a fence had been erected and thenceforward maintained on the east end of the eighty rods separating the two farms.    Subsequently and more than twenty years preceding the commencement of any trouble between the parties hereto the fence had been completed on the west end, so that for a period of more than twenty years there was a fence along the entire eighty rods marking the limits of occupancy of each farm.    A survey had been made by one Tubbs, then county surveyor, more than twenty years prior to 1913, and the line run by him appears to have been substantially along such old fence.    Under defendant's own testimony the fence was there at the time he entered into possession of his farm, and since then each of the parties occupied their respective farms up to such fence.

Prior to defendant's occupancy the west forty rods of such fence had been by tacit understanding and acquiescence kept and maintained by plaintiff and his predecessors and the east forty rods by defendant's predecessors.

About the fall of 1913 some conversation was had between the parties with reference to rebuilding this fence, and about February, 1914, the defendant removed the old fence as it then stood on the east forty rods and set several fence posts, one on the east end of the line, and, as he claims, in the hole in which the old fence post had been standing, and another at the center of the eighty rods, some two and one-half feet north of where the old fence had stood.    He also placed one or more posts between such east and west posts of his proposed fence line.    This new line so proposed to be fenced by him was objected to by the plaintiff.

In the spring of 1914 the supervisors of the town were called in unofficially to suggest the correct line between the

parties so that the fence building might continue. Their proposed line was also to the north of what had been the old fence. This again did not meet the plaintiff's approval, and it was then and there orally agreed between the parties hereto that one William Child, then county surveyor, should be called in to make a survey, each to pay one half of the expense thereof and to abide by the result of such survey. It was substantially agreed between the parties at the time Child made his survey that the west end of the eighty rods was practically as indicated by the fence post which had been placed there by plaintiff, although defendant at times in his testimony and by other evidence contended that such post was placed some eight inches south of the real line, but nevertheless it was accepted as the correct point for the west end and so treated by Mr. Child. The line established by Mr. Child was north of the place where the defendant had replaced the east post line, and at the center thereof was a little north of the post there placed in the preceding February by defendant. The parties paid their respective portions of Mr. Child's bill and he sent a copy of the sketch made by him of the survey to each of the parties, but the plaintiff promptly returned his copy.

There is testimony supporting a finding made by the trial court that at the time Child finished his survey and while the parties were still there, plaintiff expressed satisfaction with such line and directed the defendant to proceed to build his forty rods of fence along such line. It is undisputed, however, that such acquiescence, if any such there was, was but momentary, for immediately upon defendant starting to erect a new fence along the line of Child's survey plaintiff promptly tore it down, and the operation of building and tearing down by the respective parties was repeated at least five times. During that period of construction and destruction defendant tore down a portion of the west end of the fence. Trespasses, counter trespasses, assaults and counter assaults have vividly marked the boundary line since then.

Claims are made by the respective parties for damage to and from each other from such respective trespasses and assaults.

The court found that there had been no trespass by the defendant; that the parties agreed to abide by the boundary line as established by Mr. Child; that his survey then established the true boundary line between the lands of the parties; that there had not been continuous and exclusive possession by plaintiff and his predecessor in title for a period of twenty years to the disputed strip of land lying between the surveyed line of Child and the old fence as it stood before being removed by the defendant in May, 1914; and also awarded to the defendant $60 as the amount of his damages wrongfully sustained over and above the amount of damages wrongfully sustained by the plaintiff, but made no finding as to the amount of each party's respective damages.

Under the evidence in this case we are forced to the conclusion that the determination by the trial court that the parties must be held to the line established by the survey of Mr. Child as locating the true and binding line of demarcation between their respective properties cannot be upheld. The original stake and original landmarks as established by the government survey were not found or located by Mr. Child for the east end of the line in question. He assumed that a black spot found eight to ten inches below the surface was the remains of the point of the old government stake. He assumed that the decayed roots of a stump near there were those of one of the witness trees recorded in the government survey, but made no search to locate the place of the other witness tree, also recorded as to the same corner. He paid no attention in his attempted location of such starting point to the undisputed fact that the fence post at such end of the old fence had stood some distance to the south of his assumed point for more than twenty years prior to the controversy between the parties, and in continuing

his survey of the line he also entirely disregarded the fact of the prior existence of such fence. · In the absence of the finding and locating of the marks established by the original government survey, the location of long-established and recognized physical evidence of such boundary lines as indicated by the maintenance of such boundary fences becomes of value and importance and cannot be disregarded or set aside either by the surveyor who seeks to establish the true government line or by a court in determining an issue presented on such subject. *Lawler v. Brennan,* 150 Wis. 115, 141, 134 N. W. 154, 136 N. W. 1058.

The use by the respective parties of the land on their respective sides of the fence up to such fence for more than twenty years prior to the arising of the controversy here might well be considered as establishing by adverse possession title in and to the farms on each side of the fence, whether such possession and occupancy by either party went beyond the calls of their respective deeds or not. The situation here on this point is squarely within the holding of this court in *Clithero v. Fenner,* 122 Wis. 356, 360, 99 N. W. 1027; *Off v. Heinrichs,* 124 Wis. 440, 448, 102 N. W. 904; *Ovig v. Morrison,* 142 Wis. 243, 125 N. W. 449. The same rule is recognized as to public highways. *Vernon v. Nicolai,* 125 Wis. 319, 325, 103 N. W. 1111.

Assuming for the purposes of this case that the oral agreement to abide by the survey of Mr. Child was binding upon the parties, such an agreement would necessarily carry with it the implied understanding that the boundary line must be the correct one and be established with something approximating absolute certainty. It ought not to be construed, under the evidence here, as an agreement to abide by a line established by some selected surveyor whether such line be right or wrong. *Anderson v. Huebel,* 133 Wis. 542, 546, 113 N. W. 975.

It must be held that the defendant was a trespasser in setting his fence posts and stretching his fence upon so much

of plaintiff's premises as lay to the north of the old fence line, and plaintiff is entitled to a judgment in accordance with such holding.

On the question of damages we think it best to dispose of this case by saying that the testimony in the record is not such as will permit the assessing of anything in the way of damages to either party.    Plaintiff to have costs here and in the court below.

*By the Court.*—Judgment reversed, with directions to enter judgment in accordance with this opinion.