## GOVE vs. WHITE.

*Rules for construing description of land in a deed—Estoppel in pais.*

1. Where a highway or river is named in a deed as a boundary of land conveyed, the *center* of such highway or river is to be understood, unless there are express words limiting the boundary to the bank of the river or the side of the highway.
2. Where there is a known and well ascertained place of beginning in the description in a deed, that must govern; and the grant must be confined within the boundaries given.
3. In construing the description of land in a deed of conveyance, a section corner mentioned therein will control courses and distances.
4. Where there was a road three rods wide along the northern line of a section, and one four rods wide along the western line (the section line in each case being the center of the road), land conveyed by a deed was described therein as "commencing on the road at the northwest corner" of said section; "thence south on the road" running along the west side of said section, "sixteen rods; thence, at right angles with said road, and parallel with the north line of said section, twenty rods, to a stake; thence, at right angles, and parallel with the west line of said section, to the road" on the north side of the section; "thence west, along the line of said road, twenty rods, to the place of beginning—containing two acres." By actual survey it appeared that the stake mentioned in

the deed was twenty-two rods east of the west line, and seventeen and a half rods south of the north line, of said section. *Held*, that in determining the land conveyed by the deed it is necessary to commence with the intersection of the center lines of said roads, which is the northwest corner of the section—to follow the center line of the west road sixteen rods; thence to follow a line (running a little south of east) to said stake; thence a line parallel with the west section line to the center of the road on the north; and thence along the center of said road, to the place of beginning.

5. Where one about to purchase land is acquainted with the deed under which the same is held, a statement by the party who executed such deed, and who still owns the adjoining lands, as to the effect of the deed or the extent of the grant, does not estop such party from afterwards disputing such a construction of the deed.

6. To constitute an estoppel in such a case, ignorance of the true state of the title on the part of the purchaser must co-exist with wilful concealment or misrepresentation by the party sought to be estopped, or such gross negligence and indifference as to the rights of others as is equivalent to actual and premeditated fraud.

APPEAL from the Circuit Court for *Waukesha* County.

Ejectment. In June, 1848, the plaintiff conveyed to one Wright lands described as follows : " commencing on the road at the northwest corner of section eleven, in town six north of range nineteen east, in the Milwaukee land district; thence south on the road dividing sections ten and eleven, sixteen rods; thence, at right angles with said road, and parallel with the north line of said section, twenty rods, to a stake; thence, at right angles, and parallel with the west line of said section, to the road leading from the first named corner to the house of said *E. Gove*, sixteen rods; thence west along the line of said road, twenty rods, to the place of beginning—containing two acres." The road first mentioned is four rods in width, and has for its center line the north and south line between said sections ten and eleven; that last named is three rods wide, and has for its center line the north line of section eleven. In December, 1854, Wright conveyed the same land by warranty deed to Jason Downer, who held possession of it until July, 1859, when he conveyed to the defendant, The premises in dispute consisted of a strip one and a half rods wide on the south side of said land, and another strip two rods wide on the

eastern side—described in the complaint as "commencing at a point on the east side of the highway which is laid out and travelled between the northwest quarter of section eleven and the northeast quarter of section ten," in the town above described, "which point is sixteen rods south of the north line of said section eleven; running thence south one and one half rods; [thence east twenty rods] * ; thence north sixteen rods to the highway which runs upon the north line of said section eleven; thence west, on the south side of said last named highway, two rods; thence south fourteen and a half rods; thence west to the place of beginning." The points in dispute in the case were, whether said strips were covered by the description in plaintiff's deed to Wright; and if not, whether the plaintiff was estopped from setting up title as against the defendant. By assuming as the point of commencement the intersection of the east and south lines of said two roads respectively, the premises in dispute would be embraced in the description; but not so, if the point of commencement were at the intersection of the *center* lines of said roads (which would be the north west corner of section eleven), and the *distances* and *quantity of land* called for by the deed were strictly followed.

On the trial, Jason Downer, Esq., testified for the defendant, that in the summer of 1854 he had conversations with Wright; saw the deed from *Gove* to him; Wright said there were two acres in the tract exclusive of the road, and gave as a reason that the stake called for at the southeast corner was sixteen rods from the east line of the road running north and south. "I was here [in the town of Waukesha] three days, and saw *Mr. Gove* after I had examined the premises, but said nothing about the lines. There were several other conversations between Wright and me, and I was here at that fall term of court several days, and we talked the matter of the title over again,

---

*The reporter ventures to supply these words, although they are omitted from the rinted case, and the original papers are no longer on file in this court.

and more particularly about the description in the deed. He gave about the same explanation as before. I went up and looked around the premises. He showed me the corner stake, as he called it, at the southeast corner. I think I paced over the premises to see if there was that amount without the road. The premises were then enclosed, with some exceptions. * * Soon after, my impression is, I had a conversation with *Mr. Gove*; * * I said to him, " I have some notion of buying Wright's place. He says he has two acres without the road ; how is it?' He said, ' I suppose he has got two acres in his enclosure without the road.' I replied, ' Mr. Wright says the corner stake is sixteen rods from the line of one road, and twenty rods from the line of the other.' He said, ' That is so, I suppose it is so ; Mr. Wright measured it off pretty much as he had a mind to himself.' He then added, ' If you want to buy it, there will be no trouble but what you will get the two acres without the road.' I afterwards purchased the premises from Wright, and took a conveyance. * * I can't say when I had the conversation with *Gove*, but think it was while I was negotiating with Wright ; and it might have been at the time I came out and examined the records. * * I entered into possession of the premises under my deed, May 1st, 1855, and remained in possession until I conveyed to *White*. I think I stated to *White*, about the time that I conveyed, that I had talked with *Gove* about the lands, and that he said there were two acres, exclusive of the road, conveyed to Wright by him. I gave up the possession to *White*. Wright was brother in law of the plaintiff. * * I became satisfied from conversation with *Gove*, that if I made the purchase of Wright there would be no trouble with *Gove*." The defendant testified as follows : " When I moved on and went to taking away the old fence to build a new one, *Gove* said to me, ' We had better measure it out, as there always seemed to be some more than two acres without the road ;' and he said, ' Get a chain, and let's measure.' I got the chain, and *Gove* and I measured it, two acres

without the road. *Gove* said it was understood Wright was to have two acres without the road, and build all the fence. We chained sixteen rods from line of road south, and twenty rods from east line of north and south road, east, and struck the stake. We chained from the fence. *Gove* said that was all right—that the agreement was that Wright was to have two acres without the road. I then went on and built the fence; close up and down board fence; cost about $2 per rod. One half of my barn I built over the line on this disputed piece. The barn cost about $300. I have put on the strip of land from five to ten dollars worth of shrubbery. Plaintiff knew of my putting on those improvements at the time, and made no objection thereto. I can't remember whether there was a stake at the southeast corner when *Gove* and I run it out; my impression is that there was. The day we measured *Gove* said, 'I dont suppose that you could hold more than two acres with the road.' I had no conversation with him from that day."

The plaintiff asked certain instructions to the jury, of which the following, among others, were refused: " 6. Where a party is drawn into a statement or admission by being mistaken as to the facts, he shall not be estopped or prevented from defending himself against the effects of such admission. 7. A party shall not be estopped unless the jury believe that his statements, assent and admission were known by him to be false, and were made with the design to deceive or influence the conduct of another. 8. A party shall not be estopped unless it is affirmatively proved to the jury that the adverse party has acted upon some designed false statement or admission, or has been influenced thereby to act, and such party seeks to set up and establish the truth to the serious damage of the party thus acting and influenced." The court then instructed the jury, in substance, that if they believed the statements of the witness Downer, or of the witness *White*, their verdict must be for the defendant.

Verdict and judgment for the defendant; and the plaintiff appealed.

*Eugene S. Turner*, for appellant, as to the question of *estoppel*, cited 4 Kent's Comm., 261, note 1 ; *Dezell v. Odell*, 3 Hill, 219, 221, 224; 2 Hilliard on R. P., 420–21, sec. 93, and 429 ; *Sparrow v. Kingman*, 1 N. Y., 242 ; *Norton v. Kearney*, 10 Wis., 443 ; *Campbell v. Smith*, 9 id., 305 ; *Van Ness v. Bush*, 14 Abb., 38 ; *W. Canal Co. v. Hathaway*, 8 Wend., 483 ; *Brewer v. B. & W. R. R.*, 5 Met., 478 ; 2 Washb. on R. P., 455–66.

*Samuel A. Randles*, for respondent, as to the proper construction of the deed, cited 2 Hilliard on R. P., pp. 265, 336, 339, 343, 345 ; *Rockwell v. Adams*, 6 Wend., 467 ; *S. C.*, 7 Cow., 762 ; *Jackson v. Widger*, id., 725 ; *Jackson v. Ogden*, 7 Johns., 238 ; *Jackson v. Vedder*, 3 id., 8 ; *McCormick v. Barnum*, 10 Wend., 104 ; *Jackson v. McConnell*, 12 id., 421 ; *Kip v. Norton*, id., 127 ; *Frier v. Jackson*, 8 Johns., 496, 508. As to *estoppel*, he cited *East India Co. v. Vincent*, 2 Atkyns, 83 ; *Niven v. Belknap*, 2 Johns., 573 ; *Burkhalter v. Edwards*, 16 Ga., 593 ; *Godeffroy v. Caldwell*, 2 Cal., 489 ; *Titus v. Morse*, 40 Me., 348 ; *Nixon v. Carco*, 28 Miss., 414 ; *Gatling v. Rodman*, 6 Ind., 289 ; *Merriwether v. Larmon*, 3 Sneed, 447 ; *Barnes v. McKay*, 7 Ind., 301 ; *Cheeney v. Arnold*, 18 Barb., 435 ; *Tarrant v. Terry*, 1 Bay (S. C.), 239 ; 7 Cow., 762 ; 6 Wend., 469; 12 id., 423.

DIXON, C. J.   We are all of the opinion that there is no estoppel growing out of the statement made by the plaintiff to Judge Downer, at the time the judge purchased of Wright in 1854.   One essential element of every equitable estoppel, by which a man is to be precluded from claiming what is his own, is that the purchaser and party claiming the benefit of such estoppel should have been ignorant of the true state of the title. Ignorance of the true state of the title on the part of the purchaser must concur with wilful misrepresentation or concealment on that of the owner.   The purchaser must not only be destitute of all actual knowledge of the true state of the title,

but of the means of acquiring knowledge by a recourse to the record or in any other manner, according to the language of many of the authorities.    See 2 Smith's Lead. Cas.,  *Doe v.  Oliver,—Dutchess of Kingston's Case*,   Hare &  Wallace's notes, 661–2, and cases cited.  Judge Downer was in possession of the deed from *Gove* to Wright, and familiar with its contents.    The terms of the deed were unambiguous, and the rights of the parties under it plain and evident.    It was in law the sole evidence of the extent of the grant, and whether the two acres conveyed were inclusive or exclusive of the highways.    To the deed, therefore, in connection with the monuments upon the land referred to and identified by it, the parties were bound to resort for the purpose of ascertaining the extent of the grant. It seems to us, under such circumstances, that the declarations of the grantor as to the effect of the deed or the extent of the grant can never operate as an estoppel.    If made without fraud and without any intention to deceive or mislead, of which we have no evidence to the contrary here, such declarations can amount to no more than an expression of opinion upon the legal effect of the deed, of which the purchaser, with the same knowledge of the facts, is equally well qualified to judge for himself.    The rule of law in such cases is, that both parties must exercise diligence and good faith ; and the purchaser must rely upon his own knowledge of the facts, and draw conclusions for himself. He cannot be permitted to say that he was misled or deceived by the mistakes or ignorance of the grantor.    To allow the declarations of the grantor, in such a case, to overcome the deed and enlarge the grant would likewise be in direct contravention of the statute of frauds.    See *Carleton v. Redington* 1 Foster, 300.

We come, then, to the construction of the deed, the effect of which will be readily determined by the application of a few familiar rules.

Where the boundary is a highway or a river, unless there be some express words in the grant limiting the boundary to the

bank of the river, or to the side of the highway, the center of the river or highway is to be taken as the boundary. *Jackson v. Hathaway*, 15 Johns., 447; *Jackson v. Louw*, 12 id., 252; *Same v. Halstead*, 5 Cow., 216; *Ex parte Jennings*, 6 id., 518; *The People v. Seymour*, 6 id., 579; *Luce v. Carley*, 24 Wend., 451. In this case there are no express words limiting the grant to the side of the highway. The language of the deed is: "commencing on the road at the northwest corner of section eleven in town six," &c., "thence south on the road dividing sections ten and eleven," &c. It appears from the survey that the corners and dividing lines of sections ten and eleven correspond with the center of the highway. Here then we have the starting point from which the quantity of land is to be measured.

Another rule is, that where there is a known and well ascertained place of beginning, in the description in a deed, that must govern, and the grant be confined within the boundaries given. *Jackson v. Wilkinson*, 17 Johns., 146; *Same v. Wendell*, 5 Wend., 142; 8 id., 183.

Still another rule is, that what is most material and most certain in the description of the property granted, has a controlling influence. A river, a known stream, a spring, or a marked tree, will control as to courses, distances and quantities. 1 Cow., 605; 5 id., 371; id., 346; 9 id., 661; 8 Wend., 183. A highway, opened and used as such, is a most material and certain object in the description of land. The same is true of the corner of a section, at which the surveyors of the public lands are required by law to establish a monument.

Here, then, we have two most material and certain and well ascertained objects in the description, showing the place of beginning—the center of the highway as described in the deed, and the corner of the section as established by the public survey. From this well ascertained place of beginning there can be no departure.

Commencing, therefore, at this point, we pursue the description

in the deed, and run thence south in the center of the highway sixteen rods. In running this line, there being no object or call by which it can be lengthened or shortened, of course the distance specified in the deed must govern, and we must stop with the sixteen rods. From this point eastwardly to the stake described as at the southeast corner, a discrepancy arises between the courses and distances named in the deed and those found by actual measurement of the land. The description in the deed is: "thence, at right angles with the said road and parallel with the north line of the aforesaid section, twenty rods, to stake.". By actual measurement it is found that the "stake" is one and one-half rods south, and something more than two rods east, of the place indicated by the written description. As already observed, course and distance must yield to natural or ascertained objects or bounds called for by the grant. The "stake," about which there is no dispute, is an ascertained object, which must govern both the course and the distance; and the south line of the land conveyed will be found by running directly from the center of the highway, at the distance of sixteen rods south of the place of beginning, to the "stake."

The other boundaries will be readily ascertained. From the "stake" north it will be by a line "parallel with the west line of said section," only the distance must be lengthened so as to reach the center of the highway on the north.

Upon the question of the supposed estoppel arising from the plaintiff's having measured the premises with the defendant *White*, and having informed *White* there were two acres exclusive of the highway, and *White* having made valuable improvements upon the portions in dispute, in case the jury should so find, we are not now prepared to express any positive opinion. *Mr. White* testifies that he has built a barn in part upon the premises in dispute, and planted some trees and shrubbery; but upon what part of the premises we are not informed. These improvements may have been made, for anything we know, upon the strip of land claimed upon the east side, to

which *White* has title by virtue of the several conveyances from *Gove* down to himself; and if so, they can have no influence in determining the plaintiff's right to recover that portion of the strip on the south side not embraced in his grant to Judge Downer. We leave this question, therefore, open for future determination, in case it should become necessary. It may be that the same reason for holding that there was no estoppel in the case of Judge Downer, exists in the case of *Mr. White* also— that his knowledge of the contents of the deeds should preclude him from averring that he was deceived.

Some of the instructions, however, which were applicable alike to both the supposed estoppels, should have been given. The sixth instruction asked by the plaintiff is undoubtedly correct law. Courts will not construe ignorance or misapprehension of the true nature or existence of a right into a forfeiture of the power to enforce it. It must appear that the party to be estopped was acquainted with his title and wilfully concealed or misstated it, or that he was guilty of such gross negligence and indifference to the rights of others as, under the circumstances, to be equivalent to actual and premeditated fraud. *Morris v. Moore*, 11 Humph., 433; *Tilghman v. West*, 8 Ired. Eq., 183; *Royston v. Howie*, 15 Ala., 309; *Parker v. Barker*, 2 Met., 423; *Watkins v. Peck*, 13 N. H., 360.

And with the qualifications as to such gross negligence and indifference to the rights of others as under the circumstances to be equivalent to actual and premeditated fraud, the seventh and eighth instructions asked should also have been given. It must undoubtedly be shown that the language or conduct of the owner was the direct inducement to the person who purchased the land or made the outlay. *Morris v. Moore, supra*; *Morton v. Hodgdon*, 32 Maine, 127; *Cambridge Institution v. Littlefield*, 6 Cush., 210; *Darlington's Appropriation*, 13 Pa. St., 430; *Otis v. Sill*, 8 Barb., 102.

It follows from these views that the judgment of the court below must be reversed.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial according to law.

DOWNER, J., took no part in the decision of this cause.

A motion for a rehearing was afterwards denied.

DIXON, C. J.   A rehearing has been asked for in this case; and in support of the motion we have been referred to the following general principles, laid down in the case of *Pearson v. Baker,* 4 Dana, 321:

"*First.*   In the general, distance yields to course; or, in the absence of any circumstances bringing the mind to a contrary conclusion, the courses shall be first pursued, contracting or extending the distance, as the case may require, to make the survey close.

*Second.*   The beginning corner in the plat, or certificate of survey, is of no higher dignity or importance than any other corner of the survey.

*Third.*   The order in which the surveyor gives the lines and corners, in his certificate of survey, is of no importance to find the true position of the survey.   Reversing the courses is as lawful and persuasive as following the order of the certificate."

Acting upon these rules, and assuming them to be correct and applicable alike to all cases, it is contended that, in commencing at the northwest corner, the starting point named in the deed, and running thence south along the west line, being the center of the road, distance must yield to course, and that the west line must be extended one and one-half rods south, so that the line thence east to the "stake" at the southeast corner may be "at right angles with the said road and parallel with the north line of the aforesaid section," as described in the deed.   Again it is contended, as the "stake" at the southeast corner is a call of "equal dignity" with the section corners and center of the highways at the northwest, that it is just as lawful, in running out the lines, to commence at the "stake," and

that if we do so, and run either west or north by lines parallel with the north and west lines of the sections, and at "right angles" from the "stake," the description in the deed will include all the land in the possession of the defendant.

The foregoing rules from the case of *Pearson v. Baker*, are no doubt correct enough as applied to the facts of that case, but they are not of universal application. The first is properly qualified. In the general, or in the absence of any circumstance bringing the mind to a contrary conclusion, distance yields to course. In this case the intention of the parties to stop at the end of the sixteen rods seems very conclusive. It is so expressly stated in the deed, and that number of rods exactly corresponds with the quantity of land to be conveyed. We held—and the correctness of our ruling in this respect is not controverted—that a proper construction was, two acres inclusive of the land to the center of the highways. It is true that, for reasons sufficiently stated in the opinion, the grantee and the defendant under him actually acquired title to a larger quantity; but that affords no ground for disregarding the clear intention of the parties as to the length of the west line. The language of the deed is plain and unambiguous in this particular, and that must govern. Besides, it is extremely doubtful whether the rule is to be applied so as to lengthen or shorten the distance upon one line in order merely to change or conform to the course or angle of another line.

The second and third rules are not to be received without qualification. In this respect they are defectively stated. It is not universally true that the beginning corner in a certificate of survey or description is of no higher dignity or importance than any other corner; nor is it true that the order in which the lines are given by the surveyor or in the deed may always be disregarded. The authorities cited in the opinion are clear upon these points. We quote from the opinion of the chancel lor in *Wendell v. The People*, 8 Wend., 189, where the rules are given with the necessary qualifications. The chancellor says:

" Where the courses, distances and quantity of land contained in a grant *correspond* with the natural or artificial monuments or boundaries referred to in the description of the premises, there can be no difficulty in making a practical location of the grant ; and it makes no difference at what angle of the premises the surveyor begins, or whether he runs backward or forward, provided he reverses the points of compass when he runs around the land in a different direction from that described in the grant. But when a practical location of the premises *cannot be made to correspond* with all the calls in the grant, certain legal rules must be observed as to *rejecting* some calls and *retaining* others ; and *it also· becomes necessary to run around the premises in the direction indicated by the description in the grant, especially where some of the angles of the lot are not marked by natural or artificial monuments.*" The facts of this case bring it fully within the qualifying circumstances stated by the chancellor, and show that neither the beginning ˋcorner nor the direction indicated by the description can be disregarded in ascertaining the location of the premises conveyed. We think, therefore, that there is no error in the opinion, and that the motion for a rehearing must be denied.

By the Court.—Motion denied.