HASS vs. PLAUTZ.

*November 1 — November 21, 1882.*

ESTOPPEL: *Boundaries of land: Acquiescence.*

1. A highway which had been laid out upon what was supposed to be a section line marked by blazed trees, was afterwards straightened, and, some year later, was moved to the true section line ascertained by a survey. The owners of the land on each side of the section line, who had built their fences along the highway as first laid out, for the purpose of fencing it in, adjusted such fences to the highway as straightened, and again adjusted them to it when it was moved. There had been no dispute or disagreement as to the true location of the section line, but that question remained an open one until the line was fixed by the survey; and the fences were built with reference solely to the highway. In an action by the land owner on one side of the section line to recover a strip of land on the other side, which before the moving of the highway had been in his enclosure, *held*, that the party in possession of such strip was not estopped from asserting his title thereto.

2. Whether a plaintiff in *ejectment* can recover, by proof of acquiescence in a certain boundary, land which he does not hold by a legal title, *quære.*

APPEAL from the Circuit Court for *Wood* County

Ejectment. The facts are stated in the opinion. The instructions there referred to were as follows:

1. " But it is further claimed by the plaintiff that at the time of their settlement and occupancy of their respective farms this old line or survey was known to both the plaintiff

and defendant; that they cleared their farms up to it; that they made their fences in reference to it, and put on their improvements and occupied it for the purpose of cultivation thereafter; that the highway was laid out along the old line with the knowledge of both parties and with the consent of both parties." 2. ".Now, if you find that these parties, even though they were mistaken as to where the true line was — if you find that they mutually agreed and adopted any particular line, though it was not the right line, and made their fences and improvements in accordance with such adoption and since have occupied it in pursuance thereof; that the line adopted, even though it was not the true line, is binding between the parties as to their respective claims and titles." 3. " And should you find also, even that there was no formal agreement; if you find there was no agreement between these parties adopting a line, though this agreement need not be an express bargain, it may be found by the acts of the parties in reference to it, and by their long acquiescence in it; if you find such was their conduct you may presume such was the agreement from their long course of action." 4. " But if you find there was nothing of that kind, and should further find that the plaintiff acted upon the belief that this old line was the section line and the boundary of his farm, made improvements up to that line; built his fence along the line; cultivated the ground; put fruit trees upon it; buildings upon it in reference to that line with the knowledge and acquiescence of the defendant; continued to so occupy it, after ten years, we will say, or more, he is estopped in law from making a claim that the new line is the real boundary between their farms."

There was a verdict for the plaintiff, and from the judgment entered thereon the defendant appealed.

For the appellant the cause was submitted on the brief of *James & Crosby.* They argued, among other things, that the instructions excepted to were wholly unsupported by the

evidence. A reasonable interpretation of the testimony only leads to the conclusion that each party, without any agreement whatever and without any understanding that there was any uncertainty in respect to the line, adopted the old blazed line as the section line and made their improvements accordingly. This would not estop the defendant from afterward asserting his title. *Gove v. White*, 23 Wis., 282; *Buckingham v. Smith*, 10 Ohio, 288; *McGarrity v. Byington*, 12 Cal., 426; *Morris v. Moore*, 11 Humph., 433. Even had it been established by the proof that the parties mutually agreed that the old blazed line was the true section line, and adopted the same, and built their fences and made their improvements with reference thereto, the defendant would not be estopped from now asserting his legal rights if he was ignorant of such rights at the time of making the agreement. *Thrall v. Lathrop*, 30 Vt., 307; *Royston v. Howie*, 15 Ala., 309; *Smith v. Hutchinson*, 61 Mo., 83; *Warner v. Fountain*, 28 Wis., 405; *Brewer v. B. & W. Railway Co.*, 5 Met., 478; *McAfferty v. Conover*, 7 Ohio St., 99. There could be no estoppel by mere acquiescence for ten years in the improvement of the land by the plaintiff, against the defendant who was ignorant of his own right to the land. *Gove v. White*, 20 Wis., 425; *S. C.*, 23 id., 282; Bigelow on Estoppel (2d ed.), 469, 536, 537; *Thayer v. Bacon*, 3 Allen, 163. If such an estoppel can be upheld in any way in an action of ejectment, it should only be in cases where the land had been occupied for a period of twenty years or more. *Sneed v. Osborn*, 25 Cal., 619; *Columbet v. Pacheco*, 48 id., 395; *Lindell v. McLaughlin*, 30 Mo., 28. Under the decisions in *Gove v. White, supra*, the *possession* of property *may be defended* in an action to recover the same by showing an equitable estoppel of the plaintiff. But further than this, the court has not gone. And see *Hayes v. Livingston*, 34 Mich., 384; *Gimon v. Davis*, 36 Ala., 589.

The cause was submitted for the respondent on the brief

of *Eldred & Grace*, his attorneys, with *E. L. Bump*, of counsel. On the question of estoppel they cited: Bigelow on Estoppel, 530; *Thayer v. Bacon*, 3 Allen, 163; *Henry v. Jones*, 28 Ala., 385; *Jordan v. Deaton*, 23 Ark., 704; *Turner v. Baker*, 64 Mo., 218; 27 Am. Rep., 238; *Baldwin v. Brown*, 16 N. Y., 359; *Vosburgh v. Teator*, 32 id., 564; *Reed v. Farr*, 35 id., 116; *Reed v. McCourt*, 41 id., 441; *Corning v. Troy I. & N. Factory*, 44 id., 584; *Adams v. Rockwell*, 16 Wend., 285; *Smith v. Hamilton*, 20 Mich., 438; *Joyce v. Williams*, 26 id., 332; *Stewart v. Carleton*, 31 id., 270; *Diehl v. Zanger*, 39 id., 601; *Dupont v. Starring*, 42 id., 492; *Case v. Trapp*, 12 N. W. Rep., 908; *Boyd v. Graves*, 4 Wheat., 517; 3 Washb. on R. P. (4th ed.), 76, 77. That an estoppel in ejectment may be interposed is well settled. *Mariner v. R. R. Co.*, 26 Wis., 84; *Smith v. Hamilton*, 20 Mich., 438. And that the plaintiff was in a position to avail himself of this estoppel was expressly held in *Turner v. Baker*, 64 Mo., 218; 27 Am. Rep., 238.

ORTON, J. This is an action of ejectment, to recover a strip of land about three rods wide lying along the east and west section line, between section ten and section three, in the same town and range, the plaintiff owning the N. W. quarter of the N. E. quarter of section ten, and the defendant owning the S. W. quarter of the S. E. quarter of section three, and in possession of said strip. About eighteen years ago, while the parties, or those under whom they hold, were in the occupancy of their respective tracts, a highway was laid out on what was then supposed to be the section line, and was laid out by blazed trees, before and then existing, as was supposed, to mark the section line, and the parties, or those under whom they claim, respectively, built a fence about one rod north and south from the center of the supposed highway. There was not then, and since that time there has not been, anything said between the parties in re-

spect to said section line, and nothing has ever been done by the parties with reference to such line. The fences were built for the purpose of fencing in said highway, and for no other purpose, as disclosed by the evidence. A few years afterwards the blazed line, and consequently the highway, being very crooked, the highway was straightened by a removal thereof in some places of several rods, and the parties again adjusted their respective fences according to such new and straightened line. About fifteen years ago, there being still a question as to the true section line, there was an attempt to survey the sections with a view of ascertaining it; but such attempt then failed, and was abandoned, for the reason that the stake or monument, and the bearing trees at the section corner, had been destroyed, and their true location could not be readily ascertained.

In 1877 there was a survey ordered by the town, and the county surveyor made an original survey, in what appears to be the usual manner, for the purpose of ascertaining and fixing said section corner and the true section line between said sections, which appears to have been lawfully and properly made. The highway was then moved upon such newly ascertained section line, and the parties again removed their respective fences along said last located highway, which left the defendant in possession of said strip of land as a part of his forty acres. The plaintiff, in explanation of this last removal of his fence along the highway, testified that he did so only because he was ordered to do it. There had never been any *dispute* or *disagreement* between the parties as to the real section line, and what was done by way of building fences or making other improvements on or contiguous to said strip, was so done with reference to the highway and not to the true line between the sections. There is nothing in the evidence which would materially change this statement of facts. On such a case, the instructions of the court excepted to were either not the proper

statement of the law, but if correct were clearly not applicable. The first instruction assumes that the parties made their fences and improvements in reference to the supposed section line, when in fact they did so solely in reference to the highway. The second instruction assumes that there was an agreement as to the line, and thereby an adoption of such line, and that the plaintiff built his fence and made his improvements in accordance therewith, when there was no evidence whatever as to such an agreement. The third and fourth instructions excepted to are: *First*, to the effect, if there was no *formal* agreement of this kind, such an agreement might be inferred by the long acquiescence and conduct of the parties; and, *secondly*, that such acquiescence and conduct had been shown, or that there was evidence tending so to prove. There was really no evidence whatever to which any of these instructions, admitting them to be good law, were applicable.

The case presented by the testimony is the very common one in a new country of a common ignorance of the true section line, and the laying out of a highway as near to it as was then practicable, and the adjustment of the first fences thereto, to meet the present necessity of clearing and cultivation, and of travel. Hence it was extremely crooked, and afterwards was straightened, and the fences again adjusted to it. The real and true line for many years was not attempted to be ascertained by anybody, and not until the stakes and bearing trees had been destroyed. There seems to have been a question all the time as to where the true section line was, and this question appears to have continued an open one between these parties also, as shown by their adjustment of their line fences to the highway, wherever it might be located, without anything being said between them as to where the true line was or might be. If an equitable estoppel by oral agreement, or by conduct or acquiescence, in a case like this, can obtain, it would be effectual to fix the

real section lines of nearly all of the lands of early settlement, without the necessity of a survey, and settle the boundary of nearly all of the lands first occupied in a new country.

It may be that the doctrine of acquiescence and estoppel thereby was properly stated in the instructions, and might have been considered by the jury if there had been any evidence to support it; but there was no such acquiescence proved, either for ten years or for any time. There was always a question about the true boundary, and there was equal ignorance of it on the part of everybody, as well as these parties, until finally ascertained by an original survey.

*Quære:* Can a plaintiff in *ejectment* recover, by proof of acquiescence in a certain boundary, land which he does not hold by a legal title? . It may, perhaps, be made matter of defense and defeat a recovery by the plaintiff, because equitable defenses are allowed under the code. But here there was no acquiescence, and therefore the question is not material. From the very meaning of the word "acquiescence," the party estopped thereby must have some knowledge of its subject matter, and either act or remain silent in reference thereto. It is hard to conceive how a party can acquiesce in a boundary of land about which he neither knew anything nor pretended to know anything, or about which there had never been any discontent, question, or dispute.

The doctrine of equitable estoppel, as to the boundaries of land, has taken almost as many forms as there are courts, and is often very loosely stated. In such case the safe rule — and the only safe rule — is for us to adhere to that particular application of it which has been so clearly established by this court in the case of *Gove v. White*, 20 Wis., 425, and 23 Wis., 282, by Chief Justice Dixon in the first case and Judge Paine in the other. Judge Dixon says: "One essential element of every equitable estoppel, by which a man is to be precluded from claiming what is his own, is that the purchaser and party claiming the benefit of such estoppel should have been igno-

rant of the true state of the title. Ignorance of the true state of the title on the part of the purchaser must *concur* with wilful misrepresentation or concealment on that of the owner." This is the doctrine as between vendor and purchaser. Judge PAINE says (in relation to the party to be estopped): " He must have understood *that there was an uncertainty about the true line,* and that he was agreeing and assenting to the line fixed upon; and if it appears that he did so agree, and knew that the defendant afterwards built his fence upon the line thus fixed, and put up valuable improvements, without objecting, he would clearly be estopped from denying that the line agreed on was the true line." And again: " It is the fact that there is a *dispute and an uncertainty* in the minds of the parties as to the true line that gives to such voluntary agreements fixing a boundary that binding character which has induced the courts so steadily to uphold them."

The law as thus stated was not given in the instructions. If it had been, the jury would probably have found that no such estoppel by agreement or acquiescence, which is the evidence of an agreement, had been established in the case. The only evidence of the true boundary and the section line consisted of the last survey in 1877, establishing the line to which the highway and the fences of the parties were lastly adjusted, and this leaves the strip in the possession and within the inclosure of the defendant. The learned counsel on both sides have presented very able briefs, and cited many authorities; but as we view the case, in the light of the law as above laid down by this court, it is unnecessary to review such authorities. There was a motion for a new trial, which was not formally overruled; but it was substantially overruled by the entry of judgment, and the facts are sufficiently before this court to establish the above proposition, that the instructions were either not the proper statement of the law, or were inapplicable to the facts.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.