TOOMEY vs. KAY and others.

*December 18, 1884 — January 13, 1885.*

*(1) Trespass to land by real owner.    (2) Boundaries: Evidence: Opinion as to correctness of survey.*

1. Possession of land for a time shorter than that required to create a title under the statutes of limitation is presumed to be under and in subordination to the legal title, and a peaceable entry upon such land by the owner, having such legal title, is not a trespass.

2. A surveyor who had testified as to his location of a certain corner was asked whether he was satisfied that such corner was or was not the true quarter-section corner, etc. *Held,* that such question was not leading, nor, the witness being an expert, was it incompetent.

APPEAL from the Circuit Court for *Grant* County.

Action of trespass *quare clausum.* The answer alleged title in the defendants. The facts will sufficiently appear from the opinion. There was a verdict for the defendants, and from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *A. W. & W. E. Bell,* and oral argument by *Mr. A. W. Bell.*

For the respondents there was a brief by *Carter & Cleary,* and oral argument by *Mr. Carter.*

CASSODAY, J. The very common, and at times very difficult, question as to the precise location of the line between the adjoining farms of neighbors is here presented. In such cases, the wills of the parties and the cost of the litigation are generally the principal considerations, while the value of the land in controversy is merely incidental. Here, it appears that the plaintiff had forty acres of land. The farm of the defendant *Kay* joined it on the east and north. The plaintiff's east line is the one in controversy. For several years prior to about 1869 there had been an old rail fence about on what is claimed to be the true line by the defend-

ants. About that time the old fence had become partly rotted down. The plaintiff and the defendant *Kay* concluded to remove it, and build a new one. In order to get it, on the precise line, they together employed the witness Overton to survey and mark the line. He did make the survey, and located what he and the plaintiff now claim to be the true line. For several years it was acquiesced in by *Kay*, who accordingly built a fence upon it, as his share of the line fence,— the plaintiff building the line fence on the north. The south end of the disputed line was about twenty-five feet east of where the old fence had been located, and the north end about seventeen feet east of where the old fence had been located. Finally, *Kay* became dissatisfied with the line as located by Overton, and so had it resurveyed by Scott and also by Barber, each of whom established it about where the old fence had been located.

Overton testified that he found the original United States quarter-section corner of the south line of the section already located; that is, he found a mound and excavation, and the remnant of a stake in it. Whether that was in fact such original corner, under the evidence as given, was at most a matter of opinion. Had the evidence conclusively established that corner, it would probably have been controlling. But the evidence in support of it is not very convincing, and there is some evidence in conflict with it; besides, there was the testimony of the two surveyors on behalf of the defendants, fixing the corner in another place. The plaintiff requested no instruction to the effect that if that corner had in fact been located as indicated by Overton, then it would control. In the absence of such request, we cannot hold that there was error in failing to so charge.

The plaintiff did not try the case nor educe any evidence upon the theory of the settlement or practical location of a disputed or uncertain line, and then the making of valuable improvements with reference to such agreed line, so as to

estop the defendants from disputing the same, and hence the decisions upon such a case are inapplicable; as *Gove v. White*, 23 Wis. 282; *Parkinson v. McQuaid*, 54 Wis. 473. Here there never had been any dispute or disagreement until long after *Kay* built the fence, and, in this respect, the case was like *Hass v. Plautz*, 56 Wis. 105.

There was sufficient evidence to take the case to the jury on the question as to the location of the true line. Having found in favor of the line claimed by the defendants as the true one, we cannot disturb the finding as against evidence.

The plaintiff requested the court to charge the jury, in effect, that the plaintiff must be presumed to be the owner of the *locus in quo* from his actual and peaceable possession, and that such possession, although wrongfully acquired, was sufficient to maintain trespass, even against the real owner. The plea of title necessarily presented for trial the question of title. There is no claim that the plaintiff's adverse possession had ripened into title under the twenty years' limitation, as in *Tobey v. Secor*, 60 Wis. 310, and *Bartlett v. Secor*, 56 Wis. 520. There being no statutory bar, it follows that if *Kay* established "a legal title to the premises," then he must "be presumed to have been possessed thereof within the time required by law, and the occupation of such premises by" the plaintiff must "be deemed to have been under and in subordination to the legal title." Sec. 4210, R. S.; *Allen v. Allen*, 58 Wis. 202. Upon that assumption *Kay* had the right to peaceably enter upon his own premises. Here there is no claim that there was any breach of the peace in making the entry. On the assumption that *Kay* had the legal title, and hence the immediate right to the actual possession, his peaceful entry was a lawful entry. Certainly, upon that assumption, he could not be regarded as a mere trespasser, and yet the instructions requested virtually asked the court to so present him to the jury. This would have been misleading. There was no error in refus-

ing to give either of the instructions so requested. This view also disposes of the two exceptions to the charge.

After one of the surveyors had testified as to his location of the corner at the south end of the disputed line, the defendants were allowed to ask him, in effect, whether he was satisfied that the corner he located was or was not the true quarter-section corner on the south side of that section 33. This was objected to as leading, irrelevant, immaterial, and incompetent. The objection was overruled, and the witness answered, in effect, that that was the only place he could legally locate it. The answer seems to have been more objectionable than the question, but there was no motion to strike it out. In fact, the answer was not clearly responsive to the question. It is claimed that the question was leading. A leading question unmistakably suggests the desired answer. *Wright v. Fort Howard*, 60 Wis. 121. If this question suggested such answer, which is quite doubtful, it certainly failed to elicit such answer, for the witness did not respond that he was "satisfied" that the corner he located was the true quarter-section corner, nor really anything in substance like that. If the question was objectionable, it was on the ground that it called for an opinion instead of facts. But we are to remember that the witness was a surveyor, had surveyed the line and located the corner in question, and had given evidence showing his competency to testify as an expert. Mr. Lawson says that the opinion of a surveyor is admissible as to "whether certain piles of stones and marks on trees are monuments of boundaries;" also as to "whether a particular line had been marked by the United States surveyor;" also as to whether "a mark on a certain tree is such as a surveyor would make;" also as to whether "a certain pile of stones is an ancient monument;" and also as to "whether a given boundary line has been correctly run." Lawson on Exp. Ev. 8, 163. In support of these propositions he cites, among other cases which

seem to be in point, *Davis v. Mason,* 4 Pick. 156; *Knox v. Clark,* 123 Mass. 216; *Shook v. Pate,* 50 Ala. 91; *Clegg v. Fields,* 7 Jones, Law, 37; *Mincke v. Skinner,* 44 Mo. 92; *Hoover v. Gonzalus,* 11 Serg. & R. 314. In the Alabama case the surveyor was allowed to testify that the line run by himself "was run correctly." This is substantially what was asked here as to the quarter-section corner. These cases are not inconsistent with *Knoll v. State,* 55 Wis. 255; nor *Yanke v. State,* 51 Wis. 469; nor any of the cases therein cited, for those cases are all distinguishable. The refusal to exclude the question was not error; certainly not, in view of the answer given as above indicated.

*By the Court.*— The judgment of the circuit court is affirmed.

