## August Hockmoth v. Bartholomew Des Grand Champs.

*Adverse possession—Boundary lines—Division fence—Evidence—Surveyor—Expert testimony.*

1. A surveyor, who testifies to finding all of the corners pertaining to a given description of land, may be asked "if he found them according to the government survey," it being a matter on which he is authorized to testify as an expert, and any evil resulting from his answer can be remedied by a cross-examination, showing his sources of information, or by other testimony if his opinion is not correct.

2. In a suit involving plaintiff's alleged adverse occupancy of land up to a division fence, which defendant claimed was not built by the plaintiff with the expectation of holding all of the land inclosed within it, it is competent for the defendant to show, in support of said claim, that after a survey of the land, which disclosed that a portion of the fence encroached on defendant's land, the plaintiff removed it so as to conform to the division line as located by said survey.

3. In a case involving a claim of title to land by adverse occupancy up to a division fence, which when built commenced on the true line, and by a deviation inclosed the land in dispute, which fence was composed in part of logs and brush,—the adjoining land being wild, and the owner not living in the neighborhood,—the evidence of adverse holding should be so strong and conclusive as to convince the jury that the fence was built as a *permanent* assertion of title to *all* of the land inside of it, which was thereafter held for the statutory period under such circumstances, and in such a way, as to plainly give notice to the community that the occupant claimed title thereto as against all persons, and this so notoriously that the original owner, if he did not know of such hostile occupation, ought to have known of it.

Error to Macomb. (Stevens, J.) Argued June 14, 1888. Decided October 12, 1888.

Trespass to land. Defendant brings error. Reversed. The facts are stated in the opinion.

*Eldredge & Spier,* for appellant.

*F. P. Monfort,* for plaintiff.

MORSE, J. This is an action of trespass upon lands, originally brought in justice's court, and certified to the circuit court for the county of Macomb upon a plea of title.

The plaintiff, September 11, 1869, acquired title by deed from one Philetus W. Norris to the E. ½ of the S. W. fractional quarter of section 19, in the township of Warren, in said county, excepting the east 40 acres thereof.

The defendant occupies the W. ½ of said S. W. fractional quarter, having purchased the south half of the same upon contract dated December 23, 1884, and leased the N. ½ January 7, 1885. Previous to his occupation, the land now held by him was unoccupied and uncultivated. It was owned at the time of plaintiff's purchase of the east half by Edwin Jerome, Sr., who willed the same to Edwin Jerome, Jr., and Frank H. Jerome. Defendant acquired his title of the Jeromes.

Plaintiff claims that he moved upon his land, and commenced clearing the same, in August, 1869; and that in the winter and summer of 1870 he completed a fence upon his west line, which he has ever since adversely maintained, until March, 1885, when the defendant took it down upon the north 80 rods, and built a new fence in its place. This was done in pursuance of an agreement between them dividing the line fence; it being agreed that defendant should thereafter maintain the north 80 rods, and the plaintiff the south 80 rods, of the division fence between them.

In 1885 a survey of this quarter section was made by one Charles Adair. He claims to have found the quarter post on the west side of section 19, and that its location conformed to the records of the survey of the same sec-

tion made by his father, George E. Adair, in 1869. He testified that he found all the corners pertaining to the S. W. ¼ of the section to his satisfaction. He was then asked to state if he found the corners according to the original survey of the government of this fractional quarter. Plaintiff's counsel objected, and he was not permitted to answer. This is made one of the assignments of error. In this survey Charles Adair divided the quarter section, and ran a line between the premises of the contending parties in this suit, giving to each half of said quarter section 75.49 acres. He found the plaintiff's fence at the south end, nearly, if not quite, upon the line established by him, but it ran northerly to the west, so that at the north end it was from 12 to 13 rods over the line. In November, 1885, the defendant moved his part of the line fence—the north 80 rods—over onto the line established by Adair. This was not done with the consent of plaintiff, who brought this suit.

Upon the trial the accuracy of Adair's survey does not seem to have been seriously disputed, and the plaintiff rested his case entirely upon his alleged adverse occupancy of this strip of land for 15 years. The plaintiff had judgment for six cents damages.

Several errors are assigned in relation to leading questions put to Charles Hockmoth, a witness for plaintiff; but we do not consider that any harm was done to defendant by them. The same may be said of the ruling of the circuit judge in permitting Adam Bloom to state that he had examined the tract-book in the United States Land-office at Detroit, and that such book gave the number of acres in this fractional quarter as 154.32. It does not appear by the record that the number of acres, as given in the original government survey of this quarter, became at all material upon the trial. The plaintiff did

not claim the strip of land in dispute by reason of his title deeds, but by his adverse occupancy.

The question propounded to the witness Adair would have been proper if he could. have testified that he found the government monuments of the corners, or any indications upon the ground that the corners located by him were the same as located by the government survey; and we are inclined to think that he should have been allowed to answer it. It is claimed by the counsel for the plaintiff that the answer would have been only a conclusion of the witness, which was for the jury; but we are of the opinion that the question was competent. This was a matter upon which Adair was authorized to testify as an expert, and any evil resulting from it could have been remedied by a cross-examination, showing his sources of information, or by other testimony, if his opinion was not correct.[1]

Evidence was offered tending to show that after the survey by Adair the plaintiff changed his fence upon his part of the line, the south 80 rods, to conform to the division line as located by such survey. This was ruled out, as we think, improperly.

It was claimed by the defense that Hockmoth did not build his fence in the first place, or maintain it afterwards, with the expectation or intent of holding or claiming all the land inclosed within it, but that he built it supposing it to be on the line; that he started correctly at the south end, but inadvertently ran it too far to the west, as it went to the northward; that he did not at any time intend to insist upon his fence as located as the true line of boundary between him and Jerome, but erected it more particularly to protect his crops, leaving the true

---

[1] Counsel for appellant cited Rogers, Exp. Test. § 113; *Toomey v. Kay*, 62 Wis. 104 (22 N. W. Rep. 286).

location of the line to be afterwards established; and that the fact that, after Adair's survey, he moved his part of the fence upon Adair's line, had some bearing towards supporting this proposition. We agree with the counsel for defendant that this evidence was important, and should have been admitted.[1]

It was shown upon the trial that previous to the commencement of this suit the plaintiff and his wife, Ann Hockmoth, lived upon the land embraced within the plaintiff's deed, and occupied the same as a homestead, but the dwelling was not upon the land in dispute. July 11, 1885, the plaintiff and his wife deeded to one Elizabeth Lefever the premises, describing them as—

"All of the east half of the south-west fractional quarter of section No. nineteen, of town one north, of range twelve east, save and except the east 40 acres, heretofore deeded to Peter Kline; the part hereby intended to be conveyed being about forty (40) acres of land, be the same more or less."

On the same day the said Elizabeth Lefever conveyed the same premises back to the plaintiff and his wife, who now hold the same as joint tenants. It is insisted that by these two conveyances the plaintiff is precluded from maintaining this suit, his wife not being joined with him. But, as has been heretofore said, the claim of the plaintiff was not brought and did not rest upon the trial on his title by deed. Both in the declaration and upon the trial he based his right to recover upon his 15 years of adverse occupancy. These conveyances, therefore, were immaterial, and of no avail as against plaintiff in this suit. The deeds do not include this strip of land in controversy. The case stands in the record as it was put to the jury by the circuit judge. The land in question here belongs to the

---

[1] Counsel for appellant cited Angell, Lim. §§ 384 (note 4), 390, and cases cited; *Skinner v. Crawford*, 44 Iowa, 119 (6 N. W. Rep. 144).

defendant, unless the plaintiff has acquired it by his adverse possession.

The counsel for the defendant presented the following requests, which were refused:

"1. When a party claims to have acquired title to the lands of another by having held possession a length of time sufficient to bar the owner from retaking possession, he must, to succeed, show that his possession has been of that exclusive, permanent, open, hostile, and adverse character as to put the owner in the position of failing to assert his rights, knowing, or having reason to know they were encroached upon, for full fifteen years.

"2. The owner need not move to retake possession till he learns or ought to know that his lands are taken possession of.

"3. The fence claimed to inclose the lands must be a permanent one. The mere inclosing a portion of the lands of an adjacent owner with a pole or brush fence does not amount to taking exclusive possession. Such a fence does not indicate an intention to claim to own the land, and does not show adverse possession.

"4. You cannot presume that the owner of the W. ½ of the S. W. fr. quarter of 19, in going along the highway where the fence is shown to be nearly on the line, and seeing a fence extending north, has thereby notice that the fence incloses any portion of his land. On the contrary, he is justified in assuming that his neighbor is only inclosing what he is entitled to."

It is claimed, and we find it so from the record, that the circuit judge, in his charge to the jury, ignored the propositions contained in these requests; and substantially instructed them that if the plaintiff inclosed the land with a fence, and commenced clearing and cultivating the premises, and thereafter—

"Maintained such possession by continued, visible, and notorious acts, such as would plainly indicate to any one desiring to investigate the premises that he was occupying, cultivating, and using the land as a part of his farm, and treating it as his own," and if his occupancy had been "distinct and hostile, in other words, adverse to, and not

by permission or in subserviency to, the rights of the defendant, or those under whom he claimed title,"—

For a period of 15 years before the date of the alleged trespass, then he could recover. It is argued that the court should have given these requests of the defendant, or at least have plainly informed the jury that they must find that plaintiff inclosed this land, not by mistake, but with the intent to claim title thereto, and under such circumstances and such *indices* of his claim as would have notified the owner of such intent.

The testimony on the part of the plaintiff shows clearly enough that he did not build all of this fence at one time, and that no line was run out or established when he built it. There was also testimony tending to show that for many years a portion of this fence was made of brush and poles. The Jeromes did not live near this land, but evidence was given on behalf of the plaintiff tending to show that the elder Jerome passed by the premises several times during the plaintiff's occupancy. There was also testimony upon behalf of the defendant tending to show that from 1870 to 1872 there was no fence along a portion of plaintiff's west line.

We think there is justice in the complaint of the defendant in this respect. All of the requests above noticed should have been given, or their substance, with the exception of the third. This as presented was too broad, but the defendant was entitled to a fair presentation of his defense to the jury. They should have been instructed that the land inclosed by plaintiff must have been so inclosed, and held afterwards by him, as an assertion of title to the land; that if the fence was a temporary one, not built with the intention of holding the land, but as an inclosure until the true line could be ascertained, he could not recover. And the jury would have a right, in determining this question, to take into

consideration how and when the fence was built; and of what materials it was composed. When it is shown that at the point where the fence was commenced it was nearly, if not exactly, upon the true line, and the land in dispute was inclosed by a deviation as the fence proceeded, and the fence was partially composed of logs and brush, and the adjoining land was wild and uncultivated, the owner not living in the neighborhood, the evidence of adverse holding should be so strong and conclusive as to convince the jury—

1. That the fence was built as a permanent assertion of title to all the land inside of it..

2. That it was held thereafter, for the necessary number of years, under such circumstances, and in such a way, as to plainly give notice to the community that he claimed title thereto as against all persons, and this so notoriously that the original owner, if he did not know of such hostile occupation, ought to have known it.

The circuit judge erred in failing to properly place before the jury the full elements of the claim of the defense that the occupancy of the plaintiff over the true line was not intended by him as a hostile one against the Jeromes. The jury was not specifically directed to the facts claimed to make up this defense, or their bearing, if found to exist, upon the question of adverse possession ; and by the ignoring of defendant's requests they might easily have been misled into the notion that the mere building of the fence, and its maintenance and occupancy of the land up to it for 15 years, was a sufficient adverse and hostile possession of such land, without regard to what the purpose or idea of the plaintiff might have been when he inclosed it.[1]

---

[1] Appellant's counsel cited *Bird v. Stark*, 66 Mich. 654, in support of the rule stated.

Plaintiff's counsel referred to same case, and to *Murray v. Hudson*, 65 Mich. 670, as supporting the charge as given.

. The judgment must be reversed, and a new trial granted.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.